1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| 9 MICHAEL CHAVEZ, | No. 2:21−cv−00007−BJR |
| 10 Plaintiff, | DEFENDANT AMAZON WEB |
| 11 v. | SERVICES, INC.'S MOTION FOR SUMMARY JUDGMENT |
| 12 AMAZON WEB SERVICES, INC., | ORAL ARGUMENT REQUESTED |
| 13 Defendant. | |

14

15

16

17

18

19

20

21

22

23

24

25

26

MOTION FOR SUMMARY JUDGMENT
(No. 2:21−cv−00007−BJR)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

155607400.1

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................. 1

II.   STATEMENT OF FACTS ....................................................... 2

    A.    Chavez struggled to meet performance expectations............................... 2

    B.    Amazon repeatedly extends Chavez's leave of absence at his request.................. 3

    C.    Amazon and Chavez engaged in an interactive dialogue and agreed to a
        reasonable accommodation. ......................................................... 4

    D.    Chavez resigned from his position.................................................. 6

III.  SUMMARY JUDGMENT STANDARD ........................................... 7

IV.   ARGUMENT ................................................................... 8

    A.    Chavez's discrimination and retaliation claims fails as a matter of law................ 8

        1.    Amazon offered—and Chavez agreed to—a reasonable
            accommodation. ............................................................... 9

        2.    There is no evidence Chavez suffered an adverse employment
            action at all, let alone because of his disability......................... 12

            a.    Chavez resigned and was not constructively discharged. ............. 13

            b.    Chavez did not receive a raise because he was a poor
                performer........................................................... 15

    B.    Chavez's wrongful termination claim fails as a matter of law. ........................ 16

V.    CONCLUSION.................................................................. 16

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## I.    INTRODUCTION

Mr. Chavez asserts claims of discrimination, retaliation, and wrongful termination. The undisputed facts, however, conclusively demonstrate that each claim fails as a matter of law.

Amazon did not discriminate against Mr. Chavez. To the contrary, Amazon worked tirelessly with Mr. Chavez to identify a reasonable accommodation for his disability. Most importantly, ***Mr. Chavez accepted the proposed accommodation, and his doctor confirmed the accommodation was medically sufficient***. This is the very antithesis of discrimination.

Nor did Amazon retaliate against Mr. Chavez. Indeed, Mr. Chavez did not suffer any adverse action. The only conceivably "adverse" action taken by Amazon—choosing not to give Mr. Chavez a raise in 2019—was due not to Mr. Chavez's disability but instead his poor performance. In 2018, *the year before Mr. Chavez took disability leave*, Mr. Chavez received the lowest performance rating—"Least Effective"—making him ineligible for a pay increase in 2019 as a matter of Amazon policy. To state the obvious, Amazon's actions based on events occurring prior to learning of Mr. Chavez's disability cannot be retaliatory.

Lastly, Mr. Chavez was not terminated. He resigned. And his alleged reasons for resigning—which are tantamount to frustration that he received negative feedback—are wholly insufficient to support a claim of constructive discharge.

Instead of proving discrimination or retaliation, the undisputed facts show Amazon worked closely with Mr. Chavez to accommodate his disabilities *despite* the fact Mr. Chavez was underperforming as an Amazon employee. In fact, evidence suggests Mr. Chavez manufactured conditions he believed would prompt Amazon to settle when he sued. His scheme should not be rewarded. Each of Mr. Chavez's claims fails as a matter of law and should be dismissed.

MOTION FOR SUMMARY JUDGMENT
(No. 2:21−cv−00007−BJR) – 1

155607400.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

## II.    STATEMENT OF FACTS

**A.    Chavez struggled to meet performance expectations.**

Michael Chavez began working at Amazon as a business analyst on September 5, 2017. *See* Declaration of Kevin J. Hamilton in support of Defendant's Motion for Summary Judgment ("Hamilton Decl.") at ¶ 2, Ex. A, p. 5 (PLTF 000004). He struggled to meet expectations from the very beginning. In his first performance evaluation, Mr. Chavez's peers and manager noted the following deficiencies in his performance:

> "Michael needs to understand the business requirements over his own areas of growth. He has a constant struggle with [E]xcel and legacy reports that he needs to find a way to resolve rather than get more entangled and frustrated with."

> "Mike tends to rely on others for decisions even when he is the owner/customer. I think he'll grow best by becoming more independent and taking on more of that ambiguity himself. This will allow the team to move faster."

> "[I] [s]uggest communicating business reporting requirements clearly, and focus on the main outcomes, and leave out unnecessary details."

> "[I] [s]uggest [Michael] focus on getting the building blocks right, before moving on to the next level; for instance[,] document meeting minutes and send post-meeting to confirm everyone is on the same page; confirm your assumptions with stakeholders; support your recommendations/requirements with data."

Hamilton Decl. at ¶ 3, Ex. B, p. 12-13 (AMZN_00000270-71). These issues persisted into 2018. Mr. Chavez missed deadlines, sent reports with inaccurate information to customers, and unnecessarily escalated issues for resolution by supervisors. Declaration of Jennifer Zumek ("Zumek Decl.") at ¶ 2, Ex. A, p. 6-7 (AMZN_00000097-98). In sum, Mr. Chavez struggled with the fundamentals and, as a result, was often unable to work independently.

As a result of these challenges, Mr. Chavez earned a "Least Effective" rating in 2018. Zumek Decl. at ¶ 3, Ex. B, p. 9 (AMZN_00000230). This was the lowest of three possible performance ratings employees could be assigned during the evaluation process. Zumek Decl. at ¶ 4.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1    Mr. Chavez's manager, Samir Kopal, met with Mr. Chavez on March 30, 2018 and told

2    Mr. Chavez he was not meeting expectations. Zumek Decl. at ¶ 2, Ex. A, p. 7 (AMZN_00000098).

3    At that time, Mr. Chavez was added to the "Dev List," short for "Development List." *See id.* The

4    Development List is a tool that managers use to document coaching provided to struggling

5    employees and track the employee's progress. Accordingly, in the March 30, 2018 meeting, Mr.

6    Kopal explained he would be "working closely with [Mr. Chavez] to drive focused improvement"

7    in his performance moving forward. *Id.* The pair met again less than one week later to discuss next

8    steps and develop a plan to get Mr. Chavez back on track. *Id.*; Declaration of Samir Kopal ("Kopal

9    Decl.") at ¶ 2, Ex. A, p. 4 (AMZN_00000482).

10   **B.    Amazon repeatedly extends Chavez's leave of absence at his request.**

11   In April 2018, Mr. Chavez visited Dr. Mark Holmes, a neurologist who specializes in

12   epilepsy. Hamilton Decl. at ¶ 4, Ex. C, p. 18-20 (Deposition of Dr. Mark Holmes ("Holmes Dep.")

13   at 14:23-15:6; 17:13-15). Mr. Chavez had been seeing Dr. Holmes off and on since May 2016 in

14   connection with epileptic episodes he experienced once or twice per month. *Id.* at p. 21-22 (Holmes

15   Dep. at 23:7-13; 23:22-24:16).

16   During his April 2018 visit with Dr. Holmes, Mr. Chavez indicated he was interested in

17   taking a leave of absence from work. Hamilton Decl. at ¶ 5, Ex. D, p. 42-43 (Chavez Dep. at 64:19-

18   65:13). Dr. Holmes prepared and submitted paperwork in support of Mr. Chavez's request to take

19   a leave of absence beginning June 1, 2018. Hamilton Decl. at ¶ 4, Ex. C, p. 23 (Holmes Dep. at

20   30:12-24). Amazon approved Mr. Chavez's request for leave. Zumek Decl. at ¶ 5, Ex. C, p. 14

21   (AMZN_00000093).

22   Although initially Dr. Holmes estimated Mr. Chavez would be able to return to work by

23   September 1, 2018, Mr. Chavez requested to extend his leave three times, pushing his return-to-

24   work date to January 2, 2019, then February 7, 2019, and ultimately February 19, 2019. Hamilton

25   Decl. at ¶ 4, Ex. C, p. 23 (Holmes Dep. at 30:12-24); *id.* at ¶ 5, Ex. D, p. 44-45 (Chavez Dep. at

26   101:21-102:2). Amazon granted all of Mr. Chavez's requests to extend his leave. *Id.* at p. 45

MOTION FOR SUMMARY JUDGMENT
(No. 2:21-cv-00007-BJR) – 3

155607400.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1    (Chavez Dep. at 102:3-7). Notably, Mr. Chavez notified Amazon of his request for leave *after* he

2    had been placed on the "Dev List" for his poor performance and received the "Least Effective"

3    rating.

4    **C.    Amazon and Chavez engaged in an interactive dialogue and agreed to a reasonable**
     **accommodation.**

5            At the end of his leave, Mr. Chavez emailed Amazon asking for an accommodation upon

6    his return to work. Declaration of Heidi Kucera Taylor ("Kucera Taylor Decl.") at ¶ 3, Ex. A, p.

7    6-7 (AMZN_00000389-90). Mr. Chavez requested (1) a private area to rest after having an

8    epileptic seizure, (2) permission to work from home after a seizure "as needed," and (3) flexible

9    start times after a seizure, again "as needed." *Id.* The paperwork Dr. Holmes submitted in support

10   of Mr. Chavez's request for accommodation recommended only that Amazon allow Mr. Chavez

11   "flexible start and end times on workdays when he has seizures." Hamilton Decl. at ¶ 4, Ex. C, p.

12   26 (Holmes Dep. at 41:8-19).

13           The day after receiving Mr. Chavez's request, Amazon sent a follow up email which

14   explained the accommodations process and provided Mr. Chavez with the necessary forms.

15   Hamilton Decl. at ¶ 9, Ex. H, p. 88-91 (PLTF 000218-221). That email emphasizes "[y]our

16   participation in the interactive accommodation process is required so that we can explore all

17   potential accommodation solutions." *Id.* at p. 90 (PLTF 000220). At this point, Mr. Chavez also

18   spoke with Amazon's Regional Accommodations Manager Heidi Kucera Taylor about his needs

19   and the accommodations process. Kucera Taylor Decl. at ¶ 4, Ex. B, p. 9-11 (PLTF 000228-30).

20   The pair proceeded to communicate regularly for more than two months regarding Mr. Chavez's

21   requested accommodations. *See* Kucera Taylor Decl. at ¶ 2.

22           When Mr. Chavez first requested an accommodation in February 2019, his seizures

23   occurred about once a month. Hamilton Decl. at ¶ 4, Ex. C, p. 24-25, 27 (Holmes Dep. at 38:10-

24   39:24; Holmes Dep. at 43:1-14). Dr. Holmes' recommendation mirrored that fact, and he

25   recommended that Mr. Chavez be allowed flexible start and end times on days he had seizures,

26

MOTION FOR SUMMARY JUDGMENT
(No. 2:21-cv-00007-BJR) – 4

155607400.1

once or twice per month. *See id.* at p. 27 (Holmes Dep at 43:1-14). Amazon proposed an accommodation that would do just that. Hamilton Decl. at ¶ 6, Ex. E, p. 55 (PLTF_000207). Despite the fact Amazon's proposed accommodation mirrored the request *from his own doctor*, Mr. Chavez rejected the proposal. *See id.* at p. 56 (PLTF_000208). Instead, contrary to what he and Dr. Holmes initially indicated, Mr. Chavez changed his request to seek an accommodation that would allow him to work from home two days *per week*. *Id*. Ms. Kucera Taylor explained Amazon may not be able to support that specific accommodation, but said "we can certainly review together" as soon as Amazon received updated paperwork form Dr. Holmes. *Id.* (PLTF_000208-09).

On April 5, 2019, Amazon received an updated accommodation request from Dr. Holmes that recommended "flexible start and end times on workdays when [Mr. Chavez] has seizures" and "working from home two times a week *as needed if available*." Hamilton Decl. at ¶ 4, Ex. C, p. 28-30 (Holmes Dep. at 45:2-7; 46:4-6; 46:25-47:11) (emphasis added). Dr. Holmes testified "as needed" meant Mr. Chavez should be allowed to work from home "if he actually had an episode or felt one coming on." *Id.* at p. 30-31 (Holmes Dep. at 47:18-48:4). He also clarified that Mr. Chavez did not need to work from home unless he was having an epileptic episode. *Id.* at p. 31-32 (Holmes Dep. at 48:5-7; 49:8-11) ("Q: And you certainly were—were not suggesting that Mr. Chavez needed to work from home two days a week every week on a going-forward basis? A: No. No.").

After receiving the updated request from Mr. Chavez and his doctor, Ms. Kucera Taylor connected with Mr. Kopal to discuss the revised request. Mr. Kopal explained it was not feasible for Mr. Chavez to work from home twice each week both because Mr. Chavez was the only business analyst on his team and because Mr. Chavez was still receiving in-person coaching as part of the performance improvement plan begun before he went on leave. Kucera Taylor Decl. at ¶ 5, Ex. C, p. 19 (AMZN_00000381). Although the business was unable to support Mr. Chavez's

MOTION FOR SUMMARY JUDGMENT
(No. 2:21-cv-00007-BJR) – 5

155607400.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1    exact request to work from home two times each week, Mr. Kopal asked what other options

2    Amazon could pursue to accommodate Mr. Chavez. *Id.*

3         Ultimately, Ms. Kucera Taylor proposed a compromise. She asked if Mr. Chavez would

4    be willing to try the following accommodation for ninety days: (1) work from home and flex

5    start/end times up to two days per month and (2) intermittent leave up to two days per month.

6    Hamilton Decl. at ¶ 6, Ex. E, p. 61-62 (PLTF 00000213-14). After those initial ninety days, the

7    parties could reassess and determine if the accommodations were sufficient. On April 23, 2019,

8    Mr. Chavez agreed to pilot the proposed accommodation. *Id.* at p. 64 (PLTF 000216). The

9    accommodation was fully approved and implemented within the week. Kucera Taylor Decl. at ¶

10   2.

11   **D.    Chavez resigned from his position.**

12        Just a week after Mr. Chavez agreed to Amazon's proposed accommodation, he emailed

13   Jennifer Zumek, Senior Human Resources Business Partner, on May 2, 2019 indicating he

14   intended to resign. Hamilton Decl. at ¶ 7, Ex. F, p. 73-74 (PLTF 000238-39). Contrary to what Mr.

15   Chavez alleges in his complaint, Ms. Zumek responded in less than twenty-four hours. *Compare*

16   *id.* (PTF 000237) *with* Dkt. # 8 at p. 6, ¶ 3.17 ("…Mr. Chavez submitted an email to his HR

17   representative Jennifer Zumek, informing her of his intent to resign. She did not respond.").

18        In his May 2 resignation email, Mr. Chavez raised—for the first time—concerns about

19   Mr. Kopal's behavior. Christina Manegold, who was in the process of stepping into Ms. Zumek's

20   human resources role, followed up immediately and repeatedly seeking additional information

21   about the allegations. Hamilton Decl. at ¶ 7, Ex. F, p. 67 (PLTF 000232). Soon after, Mr. Chavez

22   stopped responding to Amazon's inquiries. *See id.* His last day at Amazon was May 17, 2019. *Id.*

23        But as it turns out Mr. Chavez had been planning to leave Amazon *all along*, since at least

24   April 2018. Hamilton Decl. at ¶ 8, Ex. G, p. 78-81 (CHAVEZ 662, 667, 669-70) ("I can laugh

25   now, but when I thought I had to stay here, I was losing it;" "I hate this line of work … So, that's

26   why I'm quitting and not going to take another analyst job Haha[.]"); *see also id.* at ¶ 5, Ex. D, p.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

46-47 (Chavez Dep. at 106:24-107:17) ("I did apply to many jobs during my medical leave…").

In fact, he had been planning to leave *and sue* in hopes of collecting a settlement, according to text messages he sent friends around the same time. Mr. Chavez texted a friend explaining, "I pulled the trigger, sent [human resources] a resignation letter … and got an attorney[.] [T]hey're going to end up paying me something." Hamilton Decl. at ¶ 8, Ex. G, p. 82 (CHAVEZ 0674); *see also id.* at p. 85 (CHAVEZ 679) ("The Sr leaders love him [Mr. Kopal] [w]hich is why I knew going to them was futile *[s]o I waited and let him spout off* [.]") (emphasis added). In a conversation with a different friend, Mr. Chavez elaborated on his motivations to sue:

> Friend: Well hopefully you get a good penny from them[.] Cover your time in school[.]
>
> Chavez: [Y]eah, I hope so otherwise it's loan loan loans[.]

*Id.* at p. 86 (CHAVEZ 0682).

And, indeed, four months after resigning, Mr. Chavez enrolled full-time in his graduate program at the University of Washington, Bothell in September 2019. Hamilton Decl. at ¶ 5, Ex. D, p. 40-41 (Chavez Dep. at 38:18-39:8). He filed this lawsuit on January 4, 2021 and amended his Complaint February 5, 2021. *See generally* Dkt. Nos. 1, 8.

### III.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Beaver v. Tarsadia Hotels*, 816 F.3d 1170, 1177 (9th Cir. 2016). A fact is "material" if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson*, 477 U.S. at 248-49).

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

## IV.   ARGUMENT

Mr. Chavez brings essentially three claims against Amazon: (1) violations of the Americans with Disabilities Act, 42 U.S.C. § 12101-02; (2) violations of Washington's Law Against Discrimination, RCW 49.60 et seq.; and (3) wrongful termination in violation of public policy. Compl. ¶¶ 4.1-6.5. There is no dispute as to any material facts regarding these claims, each of Mr. Chavez's claims is fully rebutted by uncontested facts, and each claim fails as a matter of law.

### A.   Chavez's discrimination and retaliation claims fails as a matter of law.[1]

While the exact parameters of Mr. Chavez's discrimination and retaliation claims are unclear from his complaint, any such claims fail as a matter of law because Mr. Chavez cannot establish at least one necessary element of the claims.

*Discrimination.* There are two types of discrimination claim under the WLAD and the ADA: (1) failure to accommodate and (2) disparate treatment. *See Shaffstall v. Old Dominion Freight Line, Inc.*, __ F. Supp. 3d __, 2020 WL 1515621, at *5 (W. D. Wash. 2020). It is not clear from his complaint which type of claim Mr. Chavez intends to bring, but in either event both fail.

To prevail on a failure to accommodate theory under either federal or state law, Mr. Chavez must prove (1) he is a qualified individual with a disability, (2) Amazon knew about his disability and the ways in which it limited his work, and (3) Amazon failed to make reasonable accommodations for those limitations. *See Thompson v. Microsoft Corp.*, 2 F.4th 460, 467 (5th Cir. 2021); *Gibson v. Costco Wholesale, Inc.*, 488 P.3d 869, 877-78 (Wash. Ct. App. 2021). Even if Mr. Chavez meets the first two elements, any failure to accommodate claim he is asserting fails for the simple reason Amazon did, in fact, accommodate Mr. Chavez.

Alternatively, Mr. Chavez may attempt to advance a disparate treatment theory in connection with his discrimination claims. Here too, the prima facie case is the same under federal

---

[1] Because the fundamental elements of Mr. Chavez's discrimination and retaliation claims overlap, they are discussed together.

MOTION FOR SUMMARY JUDGMENT
(No. 2:21‑cv‑00007‑BJR) – 8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

and state law. To prevail, Mr. Chavez must show he (1) was a member of a protected class, (2) was doing satisfactory work, and (3) was subject to an adverse employment action because of his disability. *Marin v. King Cnty.*, 378 P.3d 203, 211-12 (Wash. Ct. App. 2016); *Fowler v. AT&T, Inc.*, 19 F.4th 292, 298-99 (3d Cir. 2021). Again, even assuming the first two elements, Mr. Chavez cannot show he was subject to any adverse employment actions, let alone that he was subject to such an action *because* of his disability.

*Retaliation.* Like Mr. Chavez's discrimination claims, his retaliation claims are subject to the same basic standard under both federal and state law. To prevail, Mr. Chavez must show (1) he engaged in protected activity, (2) he was subject to an adverse employment action, and (3) there is a causal link between his protected activity and the alleged adverse employment action. *See Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2020) (citation omitted); *McElwain v. Boeing Co.*, 244 F. Supp. 3d 1093, 1100 (W.D. Wash. 2017) (citing *Daniel v. Boeing Co.*, 764 F. Supp. 2d 1233, 1245 (W.D. Wash. 2011)).

Mr. Chavez's retaliation claims fail for the same reason his disparate treatment claims fail: he cannot show he was subject to an adverse employment action, and even if he could, there is no evidence causally linking such action to his disability.

## 1. Amazon offered—and Chavez agreed to—a reasonable accommodation.

Mr. Chavez's discrimination claim fails as a matter of law because Amazon provided him with a reasonable accommodation. "An employer is not obligated to provide an employee the accommodation he requests or prefers, the employer need only provide some reasonable accommodation." *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002) (citation omitted).[2] Instead, employers and employees are expected to engage in an interactive dialogue to

---

[2] *See also, e.g.*, *Smith v. CSRA*, 12 F.4th 396, 414 (4th Cir. 2021) ("But an employer is not required to provide the exact accommodation that the employee requested, and in the alternative may provide an alternate reasonable accommodation… .") (internal quotation marks and citation omitted); *Igasaki v. Illinois Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 961 (7th Cir. 2021) ("[I]t is the employer's prerogative to choose a reasonable accommodation; an employer is not required to provide the particular accommodation that an employee requests.") (internal quotation marks and citation omitted); *Brunckhorst v. City of Oak Park Heights*, 914 F.3d 1177, 1182-83 (8th Cir. 2019) ("[A]n employer is not required to accommodate an employee based on the employee's preference.") (citation omitted); *Noll*

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1    identify a *reasonable* accommodation. The regulations governing implementation of the ADA
2    explain that "[t]o determine the appropriate reasonable accommodation it may be necessary for the
3    [employer] to initiate an informal, interactive process with the qualified individual with a disability
4    in need of an accommodation. This process should identify the precise limitations resulting from
5    the disability and potential reasonable accommodations that could overcome those limitations." 29
6    C.F.R. § 1630.2(o)(3). Absent undue hardship, employers are required to provide *reasonable*
7    accommodations to employees with disabilities. 29 C.F.R. § 1630.2(o)(4). Amazon did just that.
8    Indeed, soon after receiving Mr. Chavez's request, Amazon proposed an accommodation
9    consistent with Mr. Chavez's request and the recommendations provided by Mr. Chavez's doctor.
10   Hamilton Decl. at ¶ 4, Ex. C, p. 26 (Holmes Dep. at 41:8-19); *id.* at ¶ 6, Ex. E, p. 55
11   (PLTF_000207).

12        Mr. Chavez rejected Amazon's proposal. He then revised his request, seeking to be allowed
13   to work from home two times a week, as needed.

14        Amazon then continued its work with Mr. Chavez to identify a reasonable accommodation.
15   Amazon's Regional Accommodations Manager, Heidi Kucera Taylor, maintained regular
16   communication with Mr. Chavez over the next two months, working to identify an accommodation
17   that met the needs of both Mr. Chavez and Amazon's business. *See, e.g.*, Kucera Taylor Decl. at ¶
18   6, Ex. D, p. 24-25 (AMZN_00000041-42); *id.* at ¶ 7, Ex. E, p. 28-32 (AMZN_00000084-88).

19        Ultimately, Ms. Kucera Taylor proposed a temporary, 90-day accommodation that allowed
20   Chavez to work from home up to two days each month and take up to two days of intermittent
21   leave each month. Hamilton Decl. at ¶ 6, Ex. E, p. 61-62 (PLTF 00000213-14). After those ninety
22   days, Amazon would work with Mr. Chavez to determine if the accommodation plan needed to be
23

24   *v. Int'l Bus. Machs. Corp.*, 787 F.3d 89, 95 (2d Cir. 2015) ("[E]mployers are not required to provide a perfect
25   accommodation or the very accommodation most strongly preferred by the employee.") (citing 29 C.F.R. § 1630 app.
     ("[Although] the preference of the individual with a disability should be given primary consideration[,] … the
26   employer providing the accommodation has the ultimate discretion to choose between effective
     accommodations… .")).

MOTION FOR SUMMARY JUDGMENT
(No. 2:21−cv−00007−BJR) – 10

155607400.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1   adjusted. *Id.* Mr. Chavez replied "As I would not incur any financial hardship in accordance with

2   it, ***I can agree to try the modified accommodations you've suggested.*** *Id.* at p. 63 (PLTF 000215).

3          Mr. Chavez's agreement to the proposed accommodation is fatal to his discrimination

4   claim. That is because, as should be obvious, if an employee *agrees* to a proposed accommodation,

5   the company has not failed to accommodate him. *Cf. Laird v. Fairfax Cnty.*, 978 F.3d 887, 894

6   (4th Cir. 2020) (holding there is no adverse action where employer and employee mutually agree

7   to job transfer); *EEOC v. JBS USA, LLC*, 339 F. Supp. 3d 1135, 1179 (D. Colo. 2018) (holding

8   employer provided reasonable accommodation when accommodation was negotiated and accepted

9   by employees).

10          And Mr. Chavez's doctor, Dr. Holmes, *confirmed* that this agreed upon accommodation

11   met Mr. Chavez's medical needs. *See* Hamilton Decl. at ¶ 4, Ex. C, p. 33 (Holmes Dep. at 58:12-

12   17) ("Q: ...[A]s long as the employer was flexible in providing intermittent leave to be able to

13   work from home ... if and when an episode occurred ... that would have addressed [Chavez's]

14   medical needs, right? A: I believe so, yes."); *Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805,

15   813 (6th Cir. 2020) (holding employer had no duty to grant accommodation request to work from

16   home three days per week where there was no medical documentation showing Plaintiff's

17   disability *required* he work from home that often). Thus, there is no dispute that Amazon offered

18   an accommodation, Mr. Chavez accepted that accommodation, and that accommodation was

19   reasonable and met Mr. Chavez's medical needs. As such, Mr. Chavez's discrimination claim

20   necessarily fails.

21          Moreover, Mr. Chavez repeatedly admitted during his deposition that he and Ms. Kucera

22   Taylor engaged in an interactive dialogue of the exact kind contemplated by the ADA and WLAD.

23   Mr. Chavez confirmed, for example, that Ms. Kucera Taylor was "engaging in a dialogue with

24   [him] about what [he] need[s] and what [he's] requesting and what the doctor is supporting."

25   Hamilton Decl. at ¶ 5, Ex. D, p. 48 (Chavez Dep. at 122:17-25). Mr. Chavez again confirmed the

26   nature of his interactions with Ms. Kucera Taylor when the question was posed a different way:

MOTION FOR SUMMARY JUDGMENT
(No. 2:21−cv−00007−BJR) – 11

155607400.1

1

2

> "Q: Fair to say that was a two-way street? It was an interactive dialogue. You're asking. She's responding. You're providing additional input. She's responding, right? A: Yes." *Id.*

3    And again:

4

5

6

> "Q: So she was—she was proposing another way around this if Mr. Kopal couldn't agree to two days per week, right? A: Well, another way around what? Q: Providing you an accommodation. She was trying to be creative to solve the problem, right? A: Yeah. *She was certainly trying to provide options*." *Id.* (Chavez Dep. at 131:24-132:6) (emphasis added).

7

8        Like Ms. Kucera Taylor, Mr. Chavez's manager expressed a desire to explore various

9    options to accommodate Mr. Chavez. Although at the time the business was unable to support Mr.

10   Chavez's revised accommodation request to work from home twice each week, Mr. Kopal asked

11   Ms. Kucera Taylor to "[p]lease let [him] know what are the other options (if any)." Kucera Taylor

12   Decl. at ¶ 5, Ex. C, p. 19 (AMZN_00000381). In sum, Mr. Kopal and Ms. Kucera Taylor worked

13   with one another and with Mr. Chavez to identify a reasonable accommodation that met the needs

14   of the business while allowing Mr. Chavez to perform his job. The law requires nothing more.

15       Mr. Chavez cannot offer any evidence to dispute Amazon engaged in an interactive

16   dialogue with him. Nor can he dispute that interactive dialogue resulted in a medically adequate

17   accommodation *to which he agreed*. As such, his accommodation claim fails as a matter of law.

18

      **2.**    **There is no evidence Chavez suffered an adverse employment action at all, let alone because of his disability.**

19       To prevail on his disparate treatment discrimination claim, as well as on his retaliation

20   claims, Mr. Chavez must show both that he was subject to an adverse employment action and that

21   there is causal link between that adverse action and his disability. *See Marin*, 378 P.3d at 211-12

22   (outlining prima facie disparate treatment case under the WLAD); *Fowler*, 19 F.4th at 298-99

23   (same for ADA); *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000) (citation omitted)

24   (outlining prima facie retaliation case under the ADA); *McElwain v. Boeing Co.*, 244 F. Supp. 3d

25   1093, 1100 (W.D. Wash. 2017) (citing *Daniel v. Boeing Co.*, 764 F. Supp. 2d 1233, 1245 (W.D.

26   Wash. 2011)) (same for WLAD). The causal element of his discrimination claim is particularly

MOTION FOR SUMMARY JUDGMENT
(No. 2:21−cv−00007−BJR) – 12

155607400.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1    demanding: Mr. Chavez "must show that the adverse employment action would not have occurred

2    but for the disability." *Murray v. Mayo Clinic*, 934 F.3d 1101, 1105 (9th Cir. 2019).

3         Mr. Chavez cannot satisfy either required element. As explained above, in response to Mr.

4    Chavez's request, Amazon provided reasonable accommodations to which Mr. Chavez agreed.

5    Hamilton Decl. at ¶ 6, Ex. E, p. 61-62 (PLTF 00000213-14). This is hardly "adverse action." Mr.

6    Chavez claims Amazon did not increase his pay in 2019, but Amazon had a legitimate, non-

7    discriminatory reason for doing so:  he was a poor performer. That's an obviously appropriate

8    reason to not provide a raise. Finally, Amazon did not terminate Mr. Chavez; *he resigned*. These

9    are not "adverse actions" and, regardless, Mr. Chavez does not offer even a scintilla of evidence

10   that those actions would not have occurred but for his disability. His discrimination and retaliation

11   claims thus fail as a matter of law.

12              **a.    Chavez resigned and was not constructively discharged.**

13        Resignations like Mr. Chavez's are presumed to be voluntary. *See Washington v. Boeing*

14   *Co.*, 19 P.3d 1041, 1049 (Wash. Ct. App. 2000) (citation omitted). Just a week after accepting

15   Amazon's proposed accommodation, Mr. Chavez emailed Human Resources Business Partner

16   Jennifer Zumek on May 2, 2019 indicating he intended to resign. Hamilton Decl. at ¶ 7, Ex. F, p.

17   72-74 (PLTF 000237-39); Dkt. # 8 at ¶ 3.17. Because Mr. Chavez was not terminated, he must

18   show he was constructively discharged to establish an adverse employment action. He must show

19   (1) a deliberate act by Amazon that made his working conditions so intolerable that a reasonable

20   person would have felt compelled to resign and (2) that he resigned because of the conditions and

21   not for some other reason. *Washington*, 19 P.3d at 1049 (citation omitted). To determine whether

22   Amazon acted deliberately, "[t]he court looks to the employer's words or acts to determine if there

23   is an intention to dispense with the employee's services." *Kaplan v. GridPoint, Inc.*, No. C09-

24   0468JLR, 2010 WL 2376228, at *12 (W.D. Wash. June 9, 2010) (citing *Barrett v. Weyerhaeuser*

25   *Co. Severance Pay Plan*, 700 P.2d 338, 342 (Wash. Ct. App. 1985)). "There must be evidence

26   presented that an employer has *deliberately* acted to make an employee's working conditions so

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1    intolerable that the employee was forced to resign." *Gibson*, 397 F. Supp. 2d at 1281 (emphasis

2    added) (citations omitted). "The existence of unlawful discrimination alone is insufficient to

3    support a finding of constructive discharge from employment." *Id.*

4         Mr. Chavez cannot show Amazon or his manager Mr. Kopal deliberately made his working

5    conditions intolerable. Courts regularly reject constructive discharge claims based on work

6    environments far more intolerable than the one alleged here. For example, employees' constructive

7    discharge claims were dismissed even where their supervisors made a series of offensive sexual

8    and racist comments over the span of five years. *See Crownover v. State ex rel. Dept. of Transp.*,

9    265 P.3d 971, 975-75, 980-81 (Wash. Ct. App. 2011); *see also*, *e.g.*, *Garrison v. Dolgencorp, LLC*,

10   939 F.3d 937, 943 (8th Cir. 2019) (granting summary judgment on ADA claim where immediate

11   supervisor spread rumors Plaintiff planned to quit and told Plaintiff certain privileges and full-time

12   employment would be revoked because these things are "petty slights and minor annoyances that,

13   though upsetting, are not actionable"). More specifically, the *Crownover* Court dismissed

14   constructive discharge claims where multiple supervisors threatened plaintiffs with closing their

15   facility and transferring them to a different location, "told many racial and sexual jokes," and

16   "bullied employees by yelling in their faces." *Id.* at 975-76.

17        Even if taken as true, Mr. Chavez's allegations regarding the working conditions at

18   Amazon are far less severe than those considered in *Crownover*. Indeed, Mr. Chavez alleges

19   nothing more than personal frustration with Mr. Kopal, claiming only that Mr. Kopal

20   "micromanage[d]" Mr. Chavez, "watched [him] like a hawk", gave him negative feedback, and

21   reprimanded him and the rest of the team. Hamilton Decl. at ¶ 5, Ex. D, p. 51-52 (Chavez Dep. at

22   203:16-204:11) (Mr. Chavez identifying the reasons he resigned).[3] As the *Crownover* Court

23   explained, however, "[a]n employee's frustration, and even receipt of direct or indirect negative

24

25   _____

     [3] That most of Mr. Kopal's direct reports continue to work for Amazon despite the allegation Kopal
26   "castigated … everyone" in the same way he allegedly castigated Mr. Chavez betrays that the alleged work
     environment was *not* so intolerable any reasonable person would have quit. In fact, other employees who were
     (allegedly) subject to the same type of comments as Chavez did not quit.

MOTION FOR SUMMARY JUDGMENT
(No. 2:21−cv−00007−BJR) − 14

155607400.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1  remarks, is not enough to show intolerable working conditions." *Id.* at 981 (citing *Washington*, 19

2  P.3d at 1046-47). Mr. Chavez's claims, like the claims in *Crownover*, should be dismissed.

3    Moreover, even if Mr. Kopal's critiques of Mr. Chavez's performance were sufficiently

4  extreme to sustain a constructive discharge claim (and they are plainly not), Mr. Chavez cannot

5  offer any evidence the critiques are related to his disability. In fact, Mr. Chavez was placed on the

6  "Development List" *before* he went on medical leave. Zumek Decl. at ¶ 2, Ex. A, p. 7

7  (AMZN_00000098) (showing Kopal first met with Chavez and placed him in performance

8  coaching March 30, 2018). More revealing still, text messages between Mr. Chavez and his close

9  friends show Mr. Chavez perceived tension between him and Mr. Kopal long before Mr. Chavez

10  requested an accommodation—even before he went on medical leave. *See e.g.*, Hamilton Decl. at

11  ¶ 8, Ex. G, p. 83-84 (CHAVEZ_0675) ("[S]o he [Kopal] hates me for sure … I got his friend in

12  trouble … (*this is jan 2018*).") (emphasis added); (CHAVEZ_0676) ("*[H]e puts everyone through*

13  *the ringer* … thinks he's a super alpha, so when i [sic] challenge him on things about my SOW,

14  he tries to beat me into submission … I don't back down and end up going on leave [in 2018].")

15  (emphasis added).

16    Mr. Chavez cannot establish he was constructively discharged and his resignation, by

17  definition, is not an adverse employment action.

18    **b.    Chavez did not receive a raise because he was a poor performer.**

19    The only other alleged adverse action Mr. Chavez conceivably raises is the fact Amazon

20  did not increase his pay in 2019. But Mr. Chavez did not receive a pay increase in 2019 because

21  his performance in 2018 was inadequate. During that year's review cycle, Mr. Chavez received a

22  rating of "Least Effective," the lowest of three possible performance ratings. Zumek Decl. at ¶ 3,

23  Ex. B, p. 9 (AMZN_00000230); *id.* at ¶ 4. Employees who are rated "Least Effective" are ineligible

24  for pay increases as a matter of Amazon policy. *Id.* at ¶ 4. Mr. Chavez cannot provide any evidence

25  his pay remained flat because of his disability; his pay is, instead, consistent with, and indeed was

26  required by, company policy.

MOTION FOR SUMMARY JUDGMENT
(No. 2:21−cv−00007−BJR) – 15

155607400.1

1    Because Mr. Chavez cannot establish that Amazon acted adversely towards him in any

2    manner, his discrimination and retaliation claims necessarily fail as a matter of law. Likewise, Mr.

3    Chavez's failure to provide any evidence connecting any purported "adverse" actions to his

4    disability is fatal to his discrimination and retaliation claims. *Murray*, 934 F.3d at 1105.

5

6    **B.    Chavez's wrongful termination claim fails as a matter of law.**

7    Finally, Mr. Chavez's claim for wrongful termination in violation of public policy fails as

8    a matter of law. To prevail, Mr. Chavez must show (1) the existence of a clear public policy; (2)

9    that discouraging conduct in which he engaged would jeopardize the public policy; (3) that the

10   public-policy-linked conduct caused his dismissal; and (4) that Defendant cannot offer an

11   overriding justification for the dismissal. *Roe v. TeleTech Customer Care Mgmt. (Colorado) LLC*,

12   257 P.3d 586, 595 (Wash. 2011).

13   Underpinning this claim is the presumption Mr. Chavez was terminated at all. He wasn't.

14   That is undisputed and confirmed by Mr. Chavez's pleadings. Dkt. # 8 at ¶ 3.17 ("Mr. Chavez

15   submitted an email to his HR representative, Jennifer Zumek, informing her of his intent to

16   resign."). Again, Mr. Chavez's resignation is presumed voluntary unless he can show Amazon

17   deliberately made his working conditions so intolerable any reasonable person would be compelled

18   to resign. *See Washington*, 19 P.3d at 1049 (citation omitted); Hamilton Decl. at ¶ 7, Ex. F, p. 73-

19   74 (PLTF 000238-39).  As discussed above, he cannot. *See supra* Sec. IV.A.2.a.

20                              **V.    CONCLUSION**

21   For the reasons stated above, Defendant respectfully requests the court grant summary

22   judgment and dismiss Mr. Chavez's claims.

23

24

25

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1    Date: January 20, 2022                          *s/ Kevin J. Hamilton*
2                                                     Kevin J. Hamilton, WSBA # 15648
                                                      Christian W. Marcelo, WSBA # 51193
3                                                     Heath L. Hyatt, WSBA # 54141
                                                      Margo S. Jasukaitis, WSBA #57045
4                                                     **Perkins Coie LLP**
                                                      1201 Third Avenue, Suite 4900
5                                                     Seattle, Washington 98101-3099
                                                      Telephone: 206.359.8000
6                                                     Facsimile: 206.359.9000
                                                      KHamilton@perkinscoie.com
7                                                     CMarcelo@perkinscoie.com
                                                      HHyatt@perkinscoie.com
8                                                     MJasukaitis@perkinscoie.com

9                                                     Attorneys for Defendant
                                                      *Amazon Web Services, Inc.*
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

MOTION FOR SUMMARY JUDGMENT
(No. 2:21–cv–00007–BJR) – 17

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

155607400.1

**CERTIFICATE OF SERVICE**

I certify under penalty of perjury that on January 20, 2022, I caused to be electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a notification of the filing to the email addresses indicated on the Court's Electronic Mail 2021 Notice List.

Dated: January 20, 2022

s/*KC Davis*
KC Davis

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000