1

2

3                                    HONORABLE BARBARA J. ROTHSTEIN

4

5

6

7              UNITED STATES DISTRICT COURT
             WESTERN DISTRICT OF WASHINGTON
8                        AT SEATTLE

9   MICHAEL CHAVEZ,                       No. 2:21-cv-00007-BJR

10                      Plaintiff,        DECLARATION OF KEVIN J. HAMILTON
                                          IN SUPPORT OF DEFENDANT AMAZON
11        v.                              WEB SERVICES, INC.'S MOTION FOR
                                          SUMMARY JUDGMENT
12  AMAZON WEB SERVICES, INC.,

13                      Defendant.

14

15        I, Kevin J. Hamilton, declare as follows:

16        1.    I am an attorney representing Defendant Amazon Web Services, Inc.

17  ("Defendant" or "Amazon") in this matter.  I am of legal age and competent to make this

18  declaration.  The statements contained herein are based on my personal knowledge and on the

19  files and records in this case.

20        2.    Attached to this declaration as **Exhibit A** is a true and correct copy of Exhibit 2 to

21  the Deposition of Michael Chavez.

22        3.    Attached to this declaration as **Exhibit B** is a true and correct copy of Exhibit 3 to

23  Mr. Chavez's deposition.

24        4.    Attached to this declaration as **Exhibit C** are true and correct copies of excerpts

25  from the deposition of Dr. Mark Holmes.

26

DECLARATION OF KEVIN J. HAMILTON
(No. 2:21-cv-00007-BJR) –1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

155607405.1

5.    Attached to this declaration as **Exhibit D** are true and correct copies of excerpts from the deposition of Michael Chavez.

6.    Attached to this declaration as **Exhibit E** is a true and correct copy of Exhibit 9 to Mr. Chavez's deposition.

7.    Attached to this declaration as **Exhibit F** is a true and correct copy of Exhibit 16 to Mr. Chavez's deposition.

8.    Attached to this declaration as **Exhibit G** are true and correct copies of text messages produced by Plaintiff in response to Defendant's discovery requests.

9.    Attached to this declaration as **Exhibit H** is a true and correct copy of an email produced by Plaintiff in discovery.

Executed in Seattle, Washington on January 20, 2022.


*s/ Kevin J. Hamilton*
Kevin J. Hamilton, WSBA # 15648

DECLARATION OF KEVIN J. HAMILTON
(No. 2:21-cv-00007-BJR) –2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1

**CERTIFICATE OF SERVICE**

2

     I certify under penalty of perjury that on January 20, 2022, I caused to be electronically

3

filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will

4

send a notification of the filing to the email addresses indicated on the Court's Electronic Mail

5

2021 Notice List.

6

     Dated: January 20, 2022

7

                       s/ *KC Davis*

8

                       KC Davis, Legal Practice Assistant

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

CERTIFICATE OF SERVICE
(No. 2:20-cv-01733) –1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

# EXHIBIT A

EXHIBIT

2

Michael Chavez



P.O. BOX 81226, SEATTLE, WA, 98108-1226

8/9/2017

Michael Chavez
22219 39th Pl S
Kent, Washington 98032
United States

Dear Michael:

On behalf of Amazon Web Services, Inc. (the "Company"), I am very pleased to offer you the position of Business Analyst II. This letter clarifies and confirms the terms of your employment with the Company.

**Start Date and Salary**

Unless we mutually agree otherwise in writing, you will commence employment on September 5, 2017 ("Start Date"). Your salary will be $105,000.00 annualized, payable in accordance with the Company's standard payroll practice and subject to applicable withholding taxes. Because your position is exempt from overtime pay, your salary will compensate you for all hours worked. You will receive your full salary in any workweek that you perform work subject to limited deductions permitted by law as applicable to your status as a salaried exempt employee. You will be eligible for a performance assessment and compensation adjustment in calendar year 2018. Ordinarily this process occurs each April.

**Signing Bonus**

In appreciation of your decision to join us, the Company will pay you a signing bonus of $16,000.00. This bonus will ordinarily be advanced to you in a single installment on the date of your first regular paycheck after your Start Date, and will be earned after you complete one full year of employment with the Company. If your employment with the Company is terminated for any reason prior to the first anniversary of your Start Date, you will be required to repay any unearned portion of the bonus, on a prorated, daily basis.

If you are actively employed with the Company on the one-year anniversary of your Start Date, you will be eligible for a second bonus in the amount of $12,000.00 during your second year of employment, which will be paid in twelve monthly installments, subject to your continued active employment, with each installment earned on a prorated daily basis. If your employment with the Company is terminated for any reason during your second year of employment, you will not receive any additional bonus installments after the date of termination, and you will be required

DECLARATION OF K. J. HAMILTON – 5

to repay any unearned portion of the final bonus installment you received, on a prorated, daily basis.

Bonus payments are payable in accordance with the Company's standard payroll practice and subject to applicable withholding taxes. Leaves of absence may affect how and when a bonus is earned and paid, as detailed in the Company's policies at the time leave is taken.

**Restricted Stock Unit Award**

Subject to approval by the Board of Directors of Amazon.com, Inc., you will be granted a restricted stock unit award with respect to 41 shares of Amazon.com, Inc. common stock. This award will vest and convert into shares of common stock over four years, as follows, subject to your continued employment with the Company:

- 5% on the 15th day of the month in which you reach your first anniversary of employment,

- An additional 15% on the 15th day of the month in which you reach your second anniversary of employment, and

- An additional 20% every six months thereafter, until fully vested.

Your award will be documented by delivery to you of a Restricted Stock Unit Award Agreement specifying the terms and conditions of the award. You will be eligible for a restricted stock unit grant, based on your performance, in calendar year 2019. Ordinarily this process occurs each April.

**Benefits**

During the term of your employment, you will be entitled to 401(k), health and welfare, vacation, and other benefits as may be offered by the Company from time to time, subject to eligibility and other terms and conditions stated in the governing documents. Generally you are eligible to enroll in our 401(k) and major medical plans as of the date you start employment, with access to our enrollment system about three business days after your Start Date. Please refer to the enclosed documents for more information.

**Background Check**

This offer is contingent on the successful completion of a background check.

**Employment at Will**

If you accept our offer of employment, you will be an employee-at-will, meaning that either you or the Company may terminate our relationship at any time for any reason, with or without cause. Any statements to the contrary that may have been made to you, or that may be made to you, by the Company, its agents, or representatives are superseded by this offer letter.

**Confidentiality, Noncompetition and Invention Assignment Agreement**

As a condition of and before you begin employment, you must sign the Confidentiality, Noncompetition and Invention Assignment Agreement (the "Agreement"). The Company's willingness to grant you the restricted stock unit award referred to above is based in significant

DECLARATION OF K. J. HAMILTON – 6

part on your commitment to fulfill the obligations specified in the Agreement. You should know that the Agreement will significantly restrict your future flexibility in important ways. For example, you will be unable to seek or accept certain employment opportunities for a period of 18 months after you leave the Company. Please review the Agreement carefully and, if appropriate, have your attorney review it as well.

**Employment Eligibility**

To comply with immigration laws, you must provide the Company with evidence of your identity and eligibility for employment in the United States no later than three (3) business days after your date of hire. If you are in visa status, you also must provide new or renewed evidence of your eligibility for employment immediately prior to or upon expiration of your visa authorization.

**Additional Provisions**

If you accept this offer, the terms described in this letter will be the initial terms of your employment, and this letter supersedes any previous discussions or offers. Any additions to or modifications to this offer must be in writing and signed by you and an officer of the Company.

**This offer and all terms of employment stated in this letter will expire August 12, 2017.**

Michael, we are very excited about the possibility of you joining us. I hope that you will accept this offer and look forward to a productive and mutually beneficial working relationship. Please let me know if I can answer any questions for you about any of the matters outlined in this letter.

Sincerely,


Philip Fitzsimons
Sr Manager Well-Architected

DECLARATION OF K. J. HAMILTON – 7

**ACCEPTANCE**

I accept employment with Amazon Web Services, Inc. under the terms set forth in this letter.

_____                          _____
Signature                                                                      Date

Michael Chavez

2017-08-09-20-41-6cde5ed5-7d4a-497a-8354-d4edb6e47987

**PLTF 000007**

# EXHIBIT B

# Forte - 2018

Complete

---

# Overview

---

# Finalized Forte

Forte 2018
Michael Chavez
Business title:
Business Analyst II
Manager:
Samir Kopal, skopal@

---

# Employee portion

**What are you most excited about at work?**

Learning. I've never worked somewhere with so many opportunities to learn. This was THE reason I wanted to work at AWS. I enjoy applying skills I gained prior to Amazon, but growing into new ones is what wakes me up in the morning. It's also very exciting to work with such talented teammates and leaders. I'm humbled often.

**When you're at your best, how do you best contribute?**

I hate to say it, but I'm at my best when my back is up against the wall. I don't relish the feeling of stress, but when I know I have to do something, I have tremendous will power to get results. Another strong trait I have is a healthy skepticism that enables me to challenge the status quo.

**Which Leadership Principles do you demonstrate when you are at your best?**

Customer Obsession
Leaders start with the customer and work backwards. They work vigorously to earn and keep customer trust. Although leaders pay attention to competitors, they obsess over customers.
Think Big

Amazon Confidential

CONFIDENTIAL

AMZN_00000268

Thinking small is a self-fulfilling prophecy. Leaders create and communicate a bold direction that inspires results. They think differently and look around corners for ways to serve customers.

Ownership

Leaders are owners. They think long term and don't sacrifice long-term value for short-term results. They act on behalf of the entire company, beyond just their own team. They never say "that's not my job."

**What growth ideas do you have for yourself? (optional)**

Sure. One of my primary goals is to deliver self-service analytics to my team and our customers. I also would like help understanding how better to use AWS tools and services to automate my work. Lastly, I'm very interested in growing into an engineering role, so steering my work in that direction would be great.

**Are there any Leadership Principles you want to focus on for growth? (optional)**

Invent and Simplify

Leaders expect and require innovation and invention from their teams and always find ways to simplify. They are externally aware, look for new ideas from everywhere, and are not limited by "not invented here." As we do new things, we accept that we may be misunderstood for long periods of time.

Insist on the Highest Standards

Leaders have relentlessly high standards - many people may think these standards are unreasonably high. Leaders are continually raising the bar and drive their teams to deliver high quality products, services and processes. Leaders ensure that defects do not get sent down the line and that problems are fixed so they stay fixed.

Deliver Results

Leaders focus on the key inputs for their business and deliver them with the right quality and in a timely fashion. Despite setbacks, they rise to the occasion and never settle.

# Feedback

**You bring a lot of strengths to your work at Amazon. What stands out for me is:**

Michael has a willingness to learn new technologies and has set goals that he wants to achieve.

**Here are the super powers your peers provided:**

Curiosity: Mike has a really strong curiosity / want to learn that is impressive. This leads to his participation in our hackathons and learning more developer-minded tasks that don't always pair with BizOps. This appears to be leading towards automation of reporting mechanisms, which should save time and allow use to move more rapidly.

Amazon Confidential

CONFIDENTIAL

AMZN_00000269

In the short time I have known Michael I believe his super power is staying "focused" to the task at hand and to his future career goals.

Michael is diligent and curious to learn new things.

Mike is curious about learning new technologies and new ways to improve reporting. He has been putting together the well-architected program report that is communicated across all geos and tracks review goal attainment. He has demonstrated customer obsession by looking at ways to improve this report and automate manual steps that are error prone.

Open Mind, Michael seeks to better himself, and is not afraid to admit faults or learn from situations.

SQL super hero

**The Leadership Principles are a key component of Amazon culture. Your peers, direct reports (if applicable), and I think you best demonstrate the following Leadership Principles:**

- Learn and Be Curious, 5 responses, 5 peers
- Deliver Results 3 responses, 3 peers
- Have Backbone; Disagree and Commit 2 responses, 1 manager, 1 peer
- Ownership 1 response, 1 peer
- Customer Obsession 1 response, 1 peer
- Invent and Simplify 1 response, 1 peer
- Bias for Action 1 response, 1 peer
- Think Big 1 response, 1 manager

**We know that leaders are never done learning and always seek to improve themselves. Below are the growth ideas your co-workers and I provided. We hope you find these ideas useful.**

**Growth ideas from me:**

Michael needs to understand the business requirements over his own areas of growth. He has a constant struggle with excel and legacy reports that he needs to find a way to resolve rather than get more entangled and frustrated with.

**Growth ideas from your peers:**

Being new to the team, Michael should concentrate on earning the team's trust by maintaining ownership of his responsibilities, diving deep to go beyond the scope of job requirements, which consequently enable him to move forward with his career aspirations.

Amazon Confidential

CONFIDENTIAL

AMZN_00000270

Mike tends to rely on others for decisions even when he is the owner / customer. I think he'll grow best by becoming more independent and taking on more of that ambiguity himself. This will allow the team to move faster.

Set a high standard for your own work, assume it is wrong, and then find ways to ensure it is right (process)

Suggest communicating business reporting requirements clearly, and focus on the main outcomes, and leave out unnecessary details. Suggest focus on getting the building blocks right, before moving onto the next level; for instance document meeting minutes and send post-meeting to confirm everyone is on the same page; confirm your assumptions with stakeholders; support your recommendations/requirements with data.

**Here are the Leadership Principles your peers, direct reports (if applicable), and I suggest you focus on for growth:**

- Ownership 4 responses, 4 peers
- Earn Trust 3 responses, 1 manager, 2 peers
- Dive Deep 2 responses, 2 peers
- 2 responses 1 manager, 1 peer
- Are Right, A Lot 1 response, 1 peer
- Bias for Action 1 response, 1 peer
- Deliver Results 1 response, 1 manager

Amazon Confidential

CONFIDENTIAL

AMZN_00000271

# EXHIBIT C



COURT REPORTING

LEGAL VIDEOGRAPHY

VIDEOCONFERENCING

TRIAL PRESENTATION

MOCK JURY SERVICES

LEGAL TRANSCRIPTION

COPYING AND SCANNING

LANGUAGE INTERPRETERS



**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**


MICHAEL CHAVEZ, an individual,

     Plaintiff,

vs.               Case No. 2:21-cv-00007-BJR

AMAZON WEB SERVICES, INC. a
Delaware Corporation,

     Defendant.
_____


**REMOTE DEPOSITION BY VIDEOCONFERENCE OF**

**MARK DAVID HOLMES, MD**


**TAKEN ON**
**FRIDAY, NOVEMBER 12, 2021**
**3:00 P.M.**


**SEATTLE,**

1          **APPEARANCES BY VIDEOCONFERENCE**

2

3  **Appearing on behalf of the Plaintiff:**

4  HEYUN "BRIAN" RHO, ESQUIRE

5  **Mix Sanders Thompson, PLLC**

6  1420 5th Avenue, Suite 2200

7  Seattle, WA  98101

8  (206) 521-5989

9  (888) 521-5980 (Fax)

10 Brian@mixsanders.com

11

12 **Appearing on behalf of the Defendant:**

13 KEVIN J. HAMILTON, ESQUIRE

14 HEATH L. HYATT, ESQUIRE

15 MARGO S. JASUKAITIS, ESQUIRE

16 **Perkins Coie LLP**

17 1201 Third Avenue, Suite 4900

18 Seattle, WA  98101-3099

19 (206) 359-8000

20 (206) 259-9000 (Fax)

21 KHamilton@perkinscoie.com

22 HHyatt@perkinscoie.com

23 MJasukaitis@perkinscoie.com

24

25



```
 1              REMOTE DEPOSITION BY VIDEOCONFERENCE OF

 2                    MARK DAVID HOLMES, MD

 3                           TAKEN ON

 4                  FRIDAY, NOVEMBER 12, 2021

 5                         3:00 P.M.

 6

 7         THE REPORTER:  We are on the record at 3:00 p.m.

 8         Dr. Holmes, would you please raise your right

 9  hand.

10         Do you solemnly swear or affirm under penalty of

11  perjury that you are Dr. Mark David Holmes and the testimony

12  you're about to give will be the truth, the whole truth, and

13  nothing but the truth?

14         THE WITNESS:  I do.

15         THE REPORTER:  Thank you.

16         Counsel, you may proceed.

17         MR. HAMILTON:  Thank you.

18  MARK DAVID HOLMES, MD, having been duly sworn, was examined,

19  and testified as follows:

20  EXAMINATION

21  BY MR. HAMILTON:

22      Q.  Good afternoon, Dr. Holmes.

23      A.  Good afternoon.

24      Q.  We've introduced ourselves off the record and I

25  think you know, but I'll do it again for the record.  My
```



NAEGELI

DEPOSITION AND TRIAL

(800)528-3335

NAEGELIUSA.COM

1          **THE REPORTER:**  Sure.  Please stand by.

2          We are off the record at 3:10 p.m.

3          **(Whereupon, a recess was taken.)**

4          **THE REPORTER:**  We are back on the record at

5    3:12 p.m.

6    **BY MR. HAMILTON:**

7          Q.    **Okay.  Dr. Holmes, you said you found a -- a**

8    **notation.**

9          A.    So that would be on your page 112, PLTF112.

10         Q.    **Got it.  Yep.**

11         A.    And I made a notation that he was anticipating

12   beginning a graduate program in computer science at UW, the

13   fall quarter.

14         Q.    **Okay.**

15         A.    And the date of that note was from 7/15/19.

16         Q.    **Okay.  And at that point, he didn't say anything**

17   **about why he was leaving Amazon, other than just to pursue a**

18   **graduate degree from -- in computer science from the**

19   **University of Washington?**

20         A.    That's all I knew.  All I knew was he decided to

21   change his career and go into grad school.

22         Q.    **All right.  Let's -- let's go back.**

23         **You're a medical doctor, correct?**

24         A.    Correct.

25         Q.    **And what's your specialty?**

**NAEGELI**
DEPOSITION AND TRIAL

**(800)528-3335**
NAEGELIUSA.COM

DECLARATION OF K. J. HAMILTON – 18

1      A.    Neurology.  I have an interest in epilepsy.

2      Q.    And -- and I take it that -- that in your capacity

3   as a neurologist with a -- with an interest in epilepsy,

4   that's the reason you were treating doctor --    Mr. Chavez,

5   correct?

6      A.    Sure.  Yes.

7      Q.    Okay.  Let me direct your attention to the

8   notebook in front of you, Exhibit 1, in particular.

9            This is your resume, your CV?

10     A.    It is.

11     Q.    You went to -- I'm -- I'm just going to flip

12   through a couple of your credentials here, if we might.  It

13   looks like you received your Bachelor of Science degree from

14   Ohio State University in 1974; is that right?

15     A.    Correct.

16     Q.    And then you attended, you got your MD also from

17   Ohio State?

18     A.    Yes.

19     Q.    And that was in 1977?

20     A.    Yes.

21     Q.    And then you interned at the Cleveland clinical

22   hospital in Cleveland, Ohio?

23     A.    Yes.

24     Q.    Was your residency focused on neurology?

25     A.    It was.



NAEGELI
DEPOSITION AND TRIAL
(800)528-3335
NAEGELIUSA.COM

DECLARATION OF K. J. HAMILTON – 19

1    A.    Yes --

2    Q.    -- at the University of Washington?

3    A.    -- I do.

4    Q.    And what courses do you teach?

5    A.    What I teach is clinical epilepsy and

6  electroencephalography.  On the services that I'm clinically

7  attending, I will have medical students, neurology

8  residents, epilepsy fellows, EEG fellows, at various times.

9  It varies from week to week, literally, as to when -- who's

10  going to be with me at that time.  So, it's kind of an on-

11  the-job training for the students and the fellows and

12  residents.

13    Q.    Is it fair to say you -- you have a high degree of

14  clinical experience in treating epilepsy?

15    A.    I do, yes.

16    Q.    Can -- can you describe for us just generally,

17  what -- what is epilepsy?

18    A.    Epilepsy means abnormal electroactivity in the

19  brain.  And epileptic seizures can take many forms.  Some

20  are associated with -- all of -- all of them are in

21  association in some way with aberration in normal

22  functioning.  You can have seizures that -- the most severe

23  type of seizure is one in which there is a complete loss of

24  consciousness associated with convulsive activity; in other

25  words, a person loses consciousness, collapses, and has a,

1    Q.    Let me direct your attention to page 169.

2    A.    169?

3    Q.    Yes.

4    A.    Okay.

5    Q.    Tell me when you're there.

6    A.    I've got it.

7    Q.    This -- this seems to be a -- a medical record

8    from May 9th, 2016; is that right?

9    A.    Yes.

10    Q.    And -- and is this the first -- I'll just

11    represent to you, that appears to me to be the first time

12    that you saw Mr. Chavez; is that right?

13    A.    Correct.

14    Q.    Okay.  And if we look at the next page, page 170,

15    under the "Progress Notes," these are your notes from that

16    meeting with Mr. Chavez; is that right?

17    A.    It is.  They are, yes.

18    Q.    Okay.  Why did Mr. Chavez present?  Why -- why was

19    he seeing you?

20    A.    He was referred to me for the evaluation of -- of

21    likely seizures.  That's why he was referred.

22    Q.    Okay.  And under, on page 170, the fourth

23    paragraph in your "Progress Notes" starts, and I'm just

24    going to read it into the record:

25            The frequency of these episodes has varied over

1    the years, but typically they occur at least once monthly

2    and are often associated with, or precipitated by, physical

3    or emotional stress, sleep deprivation, and fatigue.  He

4    does not --

5         A.   Correct.  Right.

6         Q.   -- recall ever being awakened from sleep by one of

7    these -- with one of these episodes.  They invariably occur

8    during daytime wakefulness hours.  At times, he has had as

9    many as three episodes in a single day, but multiple events

10   in a single 24-hour period of time are unusual

11   Do you see that?

12        A.   I do see that.

13        Q.   Okay.  So when he first was presenting to you, the

14   frequency of the episodes typically were occurring about

15   once a month; is that right?  Is that fair?

16        A.   Correct.

17        Q.   Okay.  And on the top of page 171, that's the next

18   page, you note that he was not taking any antiseizure

19   medication at the time; do you see that?

20        A.   Yes.

21        Q.   And you -- you indicated earlier in your testimony

22   that, generally speaking, about two-thirds of epilepsy

23   patients are able to control the episodes, the episodic

24   incidents of a seizure with medications; is that fair?

25        A.   Yes.



NAEGELI
DEPOSITION AND TRIAL    (800)528-3335
NAEGELIUSA.COM

1      A.    Yes.

2      Q.    Is that -- is that your initials there under the

3   date?

4      A.    MDH is my initial, yes.

5      Q.    Okay.  And then if we turn to page 2 under the box

6   "Return to Work Status," you checked the box, estimated

7   return to full duty on September 1st, 2018; do you see that?

8      A.    Yes.

9      Q.    And then you initialed that and signed the bottom

10  of the form?

11     A.    I did.

12     Q.    Okay.  So -- so, is it fair to say that the -- the

13  form was to document a requested leave of absence from June

14  1st to September 1st, 2018?

15     A.    Correct.

16     Q.    Why did you recommend the -- a leave of absence?

17     A.    Well, this situation comes up not infrequently

18  with my patients.  Many of them with -- who do have epilepsy

19  are not able to work at all and of those that are able to

20  work, sometimes I think they sometimes require

21  accommodations off -- to be off work to adjust to any change

22  in medication, maybe just to relieve some of the stresses

23  associated with their work.  So I wanted to support him and

24  so I went along with his request.

25     Q.    Okay.  So -- so this was his request to you and



NAEGELI
DEPOSITION AND TRIAL

(800)528-3335
NAEGELIUSA.COM

1    requested at Mr. Chavez's request, a leave of absence from

2    work starting June 1st, 2018, correct?

3        A.    Yes.

4        Q.    And then it was extended several times up through,

5    at least, February 18, 2019?

6        A.    Correct.

7        Q.    So let's -- let's return to Exhibit 2, your

8    medical records, and go to page 123 now.

9        A.    Got it.

10       Q.    Okay.  It looks like Mr. Chavez next visited you

11   on February 2nd, 2019?

12       A.    Yes.

13       Q.    On page 125 are the "Progress Notes"?

14       A.    Yes.

15       Q.    And under "Interim History," I'll -- I'll just

16   read it and make it easier for you:

17             Mr. Chavez returns today in follow-up.  Since his

18   last visit, he was placed on --

19       A.    Depakote.

20       Q.    -- Depakote -- thank you --

21       A.    Yes.

22       Q.    -- 200 -- 250 mg twice daily.  He has noted

23   considerable improvement since that regime was initiated.

24   He has had only 2 events, the last one occurring about a

25   month ago.  These events that did occur were much shorter



1    and the recovery time was much more rapid.  He is now back

2    to work on a full-time basis.

3            A.    Correct.  I was quite pleased at that time.

4            Q.    So he made --

5            A.    I thought he -- I thought he was doing much

6    better.  I was quite pleased.

7            Q.    So he had started taking Depakote about three

8    months prior to this, right?

9            A.    Depakote, yes.

10           Q.    Depakote, thank you.

11                 And reported only two episodes in that three-month

12   period?

13           A.    Yes.

14           Q.    So that -- that's -- that's why when you said you

15   were quite pleased, you were happy with this result, because

16   his episodes were decreasing?

17           A.    Anytime that I get improvement in the seizure

18   frequency, I mean, I like that.  I like that in my patients.

19   You know, that's -- again, my goal, my number one goal is

20   seizure freedom, if we can achieve it.

21           Q.    Sure.  Of course.

22                 So, what were -- at -- at least at that point in

23   time, he was experiencing episodes about once a month?

24           A.    Yes.

25           Q.    Okay.  Let's take a look at Exhibit 6 in the



1    right-hand corner.

2            So, I just want to make sure you're with me on

3    this.  It's the page that your signature is on; do you see

4    that?

5        A.    Okay.  On page -- okay, page 2 of that form?

6        Q.    Yes.

7        A.    I see that.

8        Q.    Okay.  And then the accommodation you were

9    requesting at that time was on days that he has seizures, he

10   should be allowed to have both, flexible start and end

11   times, on workdays; do you see that?

12       A.    I do see that.

13       Q.    And then you signed it.

14            That -- that was the request that you were asking

15   for from Amazon?

16       A.    Yes.

17       Q.    And if we look at page 1 of Exhibit 6, it appears

18   that request was transmitted to Amazon on March 7.

19       A.    Correct.

20       Q.    Did -- did Mr. Chavez ask you for this -- that you

21   fill out this form?

22       A.    Yes, he did.

23       Q.    And you relied on Mr. Chavez to self-report how

24   many times he was having these episodes, right?  You

25   don't -- you don't have any other way of objectively



NAEGELI
DEPOSITION AND TRIAL

(800)528-3335
NAEGELIUSA.COM

1      Q.    Okay.  And -- and what you were -- the

2  accommodation that you were recommending was that on the

3  days that he has seizures, he should be allowed to have

4  flexible start and end times on workdays?

5      A.    Yes.

6      Q.    And on -- and that, of course, I think we already

7  covered that it was unpredictable.  You -- you didn't know

8  how many days a month he was going to have seizures in the

9  future?

10     A.    Correct.

11     Q.    Okay.  And -- and what you were relying upon was

12  his self-report that he was having these one to two times

13  per month, right?

14     A.    Correct.

15     Q.    So there's -- and I don't mean to be difficult or

16  obscure about this, but there's no predictive element here.

17  You're just saying on the days when he has seizures, let's

18  be flexible about the start and end times?

19     A.    Yeah.  There's no --

20     Q.    Okay.

21     A.    In his case, I didn't see any way to predict when

22  he had seizures.  And that's actually true for most

23  patients, you never know for sure when they're going to have

24  a seizure, except in --

25     Q.    Okay.  I am --



1        A.    Yes.

2        Q.    So this one is dated April 5th, 2019.  And we just

3    look at page -- the very first page of Exhibit 7, which is a

4    fax cover sheet --

5        A.    All right.

6        Q.    -- that's dated April 5, 2019, correct?

7        A.    Yes.

8        Q.    So, this is about a month after -- about a month

9    after the first accommodation request, Exhibit 6, right?

10       A.    Yes.

11       Q.    And if we look at, I guess, the last page of this

12   exhibit and the third page of this exhibit, those are, in

13   both places you signed, that's your signature; is that

14   right?

15       A.    It is.

16       Q.    Okay.  And the cover sheet says, "Update to

17   question 9 on page 2 of 4, Health Care Provider

18   Certification form."

19             Do you see that on page 1 of Exhibit 7?

20       A.    Page 1, okay.  Got it.

21       Q.    Are you there?

22             Do you see the fax cover sheet?

23       A.    I see the fax cover sheet; yes, got it.

24       Q.    And it says, "Re:  Update to question 9 --"

25       A.    Okay.  Yes.



NAEGELI
DEPOSITION AND TRIAL
(800)528-3335
NAEGELIUSA.COM

1        Q.    -- "on page 2 of 4."

2              Do you see that?

3        A.    I see that, yes.

4        Q.    So, the purpose of this was to update question --

5    your -- your response to question 9; is that right?

6        A.    Yes.

7        Q.    Okay.  So, if we -- well, first of all, do you

8    recall the conversation with Mr. Chavez about this updated

9    response?

10       A.    Not specifically, no.

11       Q.    Okay.  Well, let's -- let's take a look at it.  On

12   page 2 of Exhibit 7, it's on the backside there, in the

13   little right-hand-corner number, it's AMZN00048.

14       A.    Okay.  Got it.

15       Q.    Okay.  And in response to question 5, it says on

16   days that he has -- that he --

17       A.    It should have "has seizures," yes.

18       Q.    Has seizures, right, (1-2x/month).  He should be

19   allowed flexible start and end times on workdays; do you see

20   that?

21       A.    I do see that.

22       Q.    That -- that's the same as the -- the

23   accommodation request we looked at earlier, right?

24       A.    It is.

25       Q.    Okay.  And then if we look at the next page of



NAEGELI
DEPOSITION AND TRIAL

(800)528-3335
NAEGELIUSA.COM

1   Exhibit 7, here, we have the update in response to   question

2   9 and the question is, "What accommodation(s), if any, do

3   you recommend?"

4           Do you see that?

5       A.   Yes.

6       Q.   And -- and you wrote, "Flexible start and end

7   times on workdays when he has seizures."

8       A.   Yes.

9       Q.   And then, also, "Working from home 2 times a week,

10  as needed, if available."

11      A.   Yes.

12      Q.   And was that a request by Mr. Chavez?

13      A.   It -- it must have been, yes.  It must have   been

14  --

15      Q.   Okay.  Do you recall --

16      A.   -- although, I don't specifically -- I don't

17  specifically recall the conversation.

18      Q.   Okay.  What did it mean, "Working from home 2

19  times a week, as needed, if available"; what -- what does

20  that mean?

21      A.   Meaning that on those days when he felt that he

22  might have a seizure, and if it's possible to do so, could

23  he work at home up to two times a week.  I think I was --

24  it's sort of a nebulous response, but I was trying to help

25  him out.

NAEGELI

DEPOSITION AND TRIAL

(800)528-3335

NAEGELIUSA.COM

1    Q.    And I -- well, I understand.

2          And -- and -- but "as needed" meant if he actually

3    had an episode or felt one coming on?

4    A.    Yes.  Yes.

5    Q.    Okay.  He -- he didn't need to work from home if

6    he wasn't having an episode, right?

7    A.    Not if he wasn't having one.

8    Q.    Okay.  And if -- the "if available" part meant if

9    it was possible to arrange it, consistent with his

10   responsibilities at work?

11   A.    Yes.  Yeah, that's always -- that's always an

12   issue.  A person -- any employee that I have as a patient

13   has to be able to work with the employer.  And I'm not aware

14   of the specificities of, in all cases, what he has to do or

15   what the employer can accommodate for him.  I'm just making

16   my own recommendations.

17   Q.    Sure.  And -- and you understand that -- that

18   there's a concept of an interactive dialogue between the

19   patient and the employer to try and work out what can--

20   A.    Yes.  And --

21   Q.    -- address the issue?

22   A.    It's kind of a -- it's kind of a three-way -- a

23   three-way position here, the employer, myself, and the

24   patient.  So -- and I understand that the employer, you know

25   -- this -- I do this often with other patients.  There has



NAEGELI
DEPOSITION AND TRIAL

(800)528-3335
NAEGELIUSA.COM

1   to be a way to accommodate the patient, yet the employer has

2   to be able to assure that they can get whatever job needs to

3   be done that they need to be, that needs to be done.

4       Q.   So do you have any recollection of the

5   conversation with Mr. Chavez that led to this document,

6   Exhibit 7?

7       A.   Not -- no, I don't, not specifically.

8       Q.   And you certainly were -- were not suggesting that

9   Mr. Chavez needed to work from home two days a week every

10  week on a going-forward basis?

11      A.   No.  No.

12      Q.   Let's -- hang on.  Give me just a moment to review

13  my notes here.

14          Let's take a look at your medical records again,

15  specifically, page 110.  Tell me when you're there.

16      A.   110, I have it.

17      Q.   Okay.  And this is a meeting with Mr. Chavez on

18  July 15, 2019; is that right?

19      A.   Correct.

20      Q.   If you go to page 112, this is that same meeting

21  that you -- you flagged earlier in the deposition when he

22  told you that he was going to be going to the graduate

23  program in computer science at the University of Washington;

24  do you recall that?

25      A.   I recall that.  Actually, I recall that visit



1      A.   In some cases, yes.  Yes.

2      **Q.   In some cases.**

3           **But -- but that's not something you recall**

4 **discussing with him?**

5      A.   No.  Not -- no, I don't, specifically.  You know,

6 I don't --

7      **Q.   And -- and --**

8      A.   Yes.  I don't recall in any of these discussions

9 with him specifically regarding, you know, leave of absence

10 or accommodations.  I -- I -- I may have, I just don't

11 recall them.

12      **Q.   Right.  And as long as -- as long as the employer**

13 **was flexible in providing intermittent leave to be able to**

14 **work from home, if and when an accommodation -- I'm**

15 **sorry -- if and when an episode occurred, that -- that would**

16 **have addressed his medical needs, right?**

17      A.   I believe so, yes.

18      **Q.   Okay.  Thank you.**

19           **MR. HAMILTON:**  No further questions.

20           **MR. RHO:**  Nothing.  Nothing for me.

21           **MR. HAMILTON:**  Okay.  Dr. Holmes -- we can go off

22 the record.

23           **THE REPORTER:**  Absolutely.  But before we go off

24 the record, Mr. Hamilton, would you like to order an

25 original of this transcript?



NAEGELI
DEPOSITION AND TRIAL
(800)528-3335
NAEGELIUSA.COM

1                        CERTIFICATE

2

3          I, Jennifer Kallmeyer, do hereby certify that I

4     reported all proceedings adduced in the foregoing

5     matter and that the foregoing transcript pages

6     constitutes a full, true and accurate record of said

7     proceedings to the best of my ability.

8

9          I further certify that I am neither related

10    to counsel or any party to the proceedings nor have any

11    interest in the outcome of the proceedings.

12

13         IN WITNESS HEREOF, I have hereunto set my hand this

14    30th day of November, 2021.

15

16

17

18    _____

19               Jennifer Kallmeyer

20

21

22

23

24

25

# EXHIBIT D

Michael Chavez
August 06, 2021

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

_____

MICHAEL CHAVEZ,                          )
                                         )
Plaintiff,                               )
                                         )
          vs.                            )No. 2:21-cv-00007-BJR
                                         )
AMAZON WEB SERVICES, INC.,               )
                                         )
Defendant.                               )

_____

Deposition Upon Oral Examination Of

MICHAEL CHAVEZ

_____

10:02 a.m.

August 6, 2021

Deposition held via videoconference.

All parties attended remotely.

REPORTED BY:  Yvonne A. Gillette, RPR, CCR No. 2129.

DECLARATION OF K. J. HAMILTON – 36

```
 1                  A P P E A R A N C E S

 2

 3

 4   For the Plaintiff:

 5

 6           MICHAEL SANDERS
             BRIAN RHO
 7           Mix Sanders Thompson
             1420 Fifth Avenue
 8           Suite 2200
             Seattle, Washington  98101
 9           206.521.5989
             michael@mixsanders.com
10

11

12   For the Defendant:

13

14           KEVIN HAMILTON
             MARGO JASUKAITIS
15           Perkins Coie
             1201 Third Avenue
16           Suite 4900
             Seattle, Washington  98101
17           206.359.8000
             khamilton@perkinscoie.com
18

19           REBECCA MEISSNER
             Amazon Web Services
20

21

22   Videographer:

23           CODY MALONE

24

25
```

DECLARATION OF K. J. HAMILTON – 37

Michael Chavez
August 06, 2021

```
 1                    Friday, August 6, 2021

 2                        10:02 a.m.

 3                         ******

 4          THE VIDEOGRAPHER:  Good morning.  We are now

 5   on the record.  The time is 10:02 a.m.  Today is

 6   Friday, the 6th day of August, 2021.  This is the

 7   video recorded testimony of Mr. Michael Chavez being

 8   taken in the case of Chavez versus Amazon Web

 9   Services, Incorporated in the United States District

10   Court, Western District of Washington at Seattle, with

11   a cause number of 2:21-CV-00007-BJR.  This deposition

12   is taking place via video conference over the Zoom

13   platform.

14          We'd ask attorneys starting with

15   Mr. Hamilton, who noticed the deposition, to please

16   voice identify yourselves for the record.

17          MR. HAMILTON:  Good morning.  This is Kevin

18   Hamilton on behalf of the defendant, Amazon Web

19   Services.  And with me is Margo Jasukaitis, as well as

20   my client, Rebecca Meissner, an in-house lawyer at

21   Amazon.

22          MR. SANDERS:  And I'm Mike Sanders.  I

23   represent the plaintiff, Mike Chavez.  With me is

24   Brian Rho.

25          THE VIDEOGRAPHER:  Thank you very much.  At
```

DECLARATION OF K. J. HAMILTON – 38

Michael Chavez
August 06, 2021

```
 1   this time, we'd ask our court reporter, Ms. Yvonne
 2   Gillette, if you would please swear in the witness,
 3   and proceed with the deposition.
 4
 5   MICHAEL CHAVEZ,                 called as a witness in the
 6                                   above-entitled cause, being
 7                                   first duly sworn, testified
 8                                   as follows:
 9
10                      EXAMINATION
11   BY MR. HAMILTON:
12   Q        All right.  Good morning, Mr. Chavez.  We
13   have introduced ourselves off the record.  Let me do
14   so again.  My name is Kevin Hamilton.  I represent
15   Amazon, as you know, in this case.  And I'm going to
16   be asking you some questions.  The court reporter is
17   going to be taking it down.  You understand the
18   purpose of today's deposition, correct?
19   A        Yes.
20   Q        Okay.  Can you please state your name for
21   the record?
22   A        Michael Chavez.
23   Q        And what's your residence address, sir?
24   A        It's 1801 Minor Avenue, Unit 913, Seattle,
25   Washington.  ZIP code is 98101.
```

DECLARATION OF K. J. HAMILTON – 39

Michael Chavez
August 06, 2021

```
 1   A        I would -- well, yeah.  I believe the reason

 2   that it was delayed is just mainly due to my progress

 3   on my thesis.

 4   Q        Okay.

 5   A        It's somewhat of a -- the reason I hesitated

 6   is it's a bit complicated because, you know, in my

 7   program, you can do -- in order to graduate, you have

 8   to fulfill -- you obviously have to take required

 9   courses and electives, but you also have to fulfill a

10   requirement of either completing what's called a

11   capstone project, which is -- depending on what your

12   focus is, but most people write some form of software

13   application.  So that's one possible requirement.  And

14   another requirement is a thesis, master's thesis.  And

15   the master's thesis is just widely known that it's

16   definitely a more difficult process.  It's going to

17   take longer.  It's more rigorous.

18   Q        Let me stop you there.  Are you attending

19   these courses in the evening, or is this a full-time

20   program?

21   A        You can do either.  I started the program

22   part-time.  I'm currently full-time.

23   Q        When did you become full-time?

24   A        I became full-time in fall of 2019.

25   Q        When in the fall?
```

DECLARATION OF K. J. HAMILTON – 40

Michael Chavez
August 06, 2021

1    A         The quarter starts in September.  I don't

2    remember the exact date.

3    Q         So sometime in September of 2019, you began

4    pursuing this master's degree full-time?

5    A         Yes.

6    Q         And you've worked at it full-time since that

7    time?

8    A         Yes.

9    Q         Before you switched to full-time working on

10   the master's program -- well, actually, let me back

11   up.  When did you start pursuing the master's program

12   in computer software and engineering at the University

13   of Washington?

14   A         When did I start the master's program?

15   Q         Yes.

16   A         This was the fall quarter of 2017.

17   Q         Okay.  So is it fair to say that from

18   2017 -- fall quarter, I presume that means September?

19   A         September.  Sorry.

20   Q         So from September 2017 until September 2019,

21   you were pursuing the master's program at the

22   University of Washington on a part-time basis?

23   A         I apologize.  Can you -- what was the

24   timeframe?

25   Q         September of 2017.

DECLARATION OF K. J. HAMILTON – 41

Michael Chavez
August 06, 2021

```
 1   change.  He has not been seen in follow-up since that
 2   time, but also has not been on any antiseizure
 3   medication.  However, over the last three months, he
 4   has experienced multiple events.  And then -- closed
 5   quote.  Did I read it correctly so far?
 6   A          Yeah.  I apologize.  I was trying to follow
 7   along.  To the best of my memory, you read it as
 8   exactly as it is on the page.
 9   Q          And skipping down a couple lines, you
10   reported to Dr. Holmes at that point that you'd had
11   six events or occasions over the last three months.
12   And you were concerned and wanted to talk to him about
13   that.  Fair to say that's what you told him at the
14   time?
15   A          Yeah.  Yes.
16   Q          So approximately twice a month?
17   A          I don't recall exactly when they occurred,
18   but you could average them that way, yes.
19   Q          Fair enough.  That's -- and then the doctor
20   notes at the bottom of that entry that you said that
21   you would also like to consider a leave of absence
22   from work.  And that's April 23rd, 2018.  Do you see
23   that?
24   A          Sorry.  Where is that?
25   Q          Very bottom of that same paragraph.
```

DECLARATION OF K. J. HAMILTON – 42

Michael Chavez
August 06, 2021

 1   A          Yes, I see that.

 2   Q          And did you have a discussion with the

 3   doctor about that?

 4   A          Yes, I believe so.

 5   Q          And did you decide not to seek the leave at

 6   that point?

 7   A          I honestly don't remember.

 8   Q          Okay.  Fair enough.  And I don't mean to --

 9   like ultimately, you took a leave of absence starting

10   a couple months later on June 1st, 2018.  So this is

11   probably the beginning of that discussion.

12   A          Yes.  It was the beginning of the

13   discussion.

14   Q          Okay.  Let's turn to page 142.  Tell me when

15   you get there.

16   A          Okay.  I'm there.

17   Q          Okay.  And so here about halfway down the

18   page, we can see this is Dr. Holmes again.  This is

19   your visit on July 23rd, 2018.  And there's a

20   paragraph under interim history in which he describes

21   the conversation.  And he says in the middle of it,

22   quote, he continued to have episodes as before, these

23   occur once or twice monthly.  These last occurred on

24   July 17 and July 18.  Do you see that language in

25   there?

DECLARATION OF K. J. HAMILTON – 43

Michael Chavez
August 06, 2021

```
 1   several different occasions, right?
 2   A          I asked them to extend it, you know, after
 3   discussing it with my doctor at least once.  I'm not
 4   sure if I did it multiple times.  I know --
 5   Q          Go ahead.
 6   A          I know there was at least one extension.
 7   Q          The original leave was set to expire in
 8   August of 2018, wasn't it?
 9   A          I'm not certain.  That could be true.  I'm
10   not certain.
11   Q          And then it was extended to January 2nd,
12   2019?
13   A          Again, I'm not sure on the exact date there.
14   But I know it was extended after the initial one,
15   after the, you know, the initial expiration date.  And
16   I'm not sure whether -- whether there was a second
17   extension as well.
18   Q          Okay.  And I'll represent to you that -- I
19   mean the documents speak for themselves.
20   A          Yeah.
21   Q          But the original return to work date was
22   August 31st.  It was extended to January 2nd, 2019,
23   and then extended again to February 7th, and finally
24   extended again until February 19th.  Any reason to
25   disagree with those dates?
```

DECLARATION OF K. J. HAMILTON – 44

Michael Chavez
August 06, 2021

 1    A          No.  I mean, not from my memory.  Yeah.  I

 2    don't have any reason to disagree.

 3    Q          And in fact, there never was a time during

 4    that leave of absence in which you asked for an

 5    extension and Amazon said no, correct?  They gave you

 6    every extension you asked for?

 7    A          Yes, that's correct.

 8    Q          Okay.  And then your first day back at work

 9    was February 19, 2019?

10    A          That sounds approximately correct.  I'm not

11    certain of the date, but it sounds right in the

12    wheelhouse, yes.

13    Q          Let's take a look at tab 6.

14    A          Okay.

15    Q          And I'll represent to you these are all

16    documents you have produced to us.  We asked for

17    documents relating to job applications that you

18    submitted, and this is a compilation of all those

19    materials that you gave to us.  Are you familiar with

20    them?

21    A          I mean, there's a huge stack.  Just based on

22    what's on top, it looks familiar, but I -- I'd have to

23    go through all of them to be certain that it's all

24    stuff that I'm familiar with.

25    Q          Okay.  We'll just look at a few.

DECLARATION OF K. J. HAMILTON – 45

Michael Chavez
August 06, 2021

```
1   Q        And then if you turn the page, the next one,

2   Exhibit 6, page 530, is dated November 8th, 2018.  Do

3   you see that?

4   A        Yes.

5   Q        And the text of that one says:  Hi, Michael.

6   Congratulations.  You have officially applied for a

7   job at Salesforce.  Thanks so much for letting us know

8   you're interested in joining our Ohana.  Do you see

9   that?

10  A        Yes.

11  Q        So the date of all of these applications is

12  while you're out on medical leave, right?

13  A        I believe so.  I don't recall the exact date

14  of the Facebook one, but I think it was in September

15  of 2018, so --

16  Q        Let's confirm that then, so it's --

17  A        Yeah.

18  Q        -- 446.  Are you there?

19  A        Yes.

20  Q        And the date of is September 27th, 2018?

21  A        Yes.

22  Q        That's during your leave?

23  A        Yes.

24  Q        Okay.  I'm going to read off -- I'm not

25  going to take the time to go through Exhibit 6.  I'll
```

DECLARATION OF K. J. HAMILTON – 46

Michael Chavez
August 06, 2021

1   represent to you that there are similar emails from

2   the following employers.  And my question is going to

3   be, to the best of your recollection, you applied to

4   all of these employers during the course of your

5   medical leave from Amazon.  The first one is Facebook.

6   Slalom, Salesforce, 98.6, Airbnb, Qualtrics, Remitly,

7   Sift Science, Hazel Analytics, OpenMarket, Redfin,

8   HomeAway, Zillow, Azuqua -- and for the record, that's

9   A-Z-U-Q-U-A -- Viasat, ExtraHop Networks, and

10  Nordstrom.

11          To the best of your recollection, you

12  applied for positions with all of those during the

13  course of your medical leave from Amazon; isn't that

14  right?

15  A         I can't say with any certainty whether I

16  applied to every single one of those, but I did apply

17  to many jobs during my medical leave.

18  Q         Okay.  And all those names are familiar to

19  you, correct?

20  A         I mean, kind of.  I know it's not a great

21  answer.  Many of what you -- many of the names you

22  read, I recognize.  I mean, the big ones.  But, yeah,

23  they -- they sound like -- sound somewhat familiar.

24  Q         All right.  We'll let the documents speak

25  for themselves.  They show what they show.  And I

DECLARATION OF K. J. HAMILTON – 47

Michael Chavez
August 06, 2021

```
 1   office to see if there was a misunderstanding or
 2   anything else you might need from me.  Do you see
 3   that?
 4   A        Yes.
 5   Q        And then on page 224, she responds, again,
 6   the very next day.  She writes:  Thanks for
 7   confirming.  You can follow up with the doctor and ask
 8   they send those additional items and any additional
 9   recommendations they might have on addressing these
10   items so we can add them to your file.  In the
11   meantime, we can certainly continue moving forward
12   with the review of your request.  And then she -- the
13   next paragraph she just says she's going to follow up
14   with your manager and HR about flex schedule and work
15   from home.  Do you see that?
16   A        Yes.
17   Q        So she's engaging in a dialogue with you
18   about what you need and what you're requesting and
19   what the doctor is supporting, right?
20   A        Yes.
21   Q        Fair to say that was a two-way street?  It
22   was an interactive dialogue.  You're asking.  She's
23   responding.  You're providing additional input.  She's
24   responding, right?
25   A        Yes.
```

DECLARATION OF K. J. HAMILTON – 48

Michael Chavez
August 06, 2021

1   for reasonable accommodations in the form of being

2   allowed to work from home for up to two days per week.

3   I would like to learn more about how the process of

4   how a final decision will be or has been made with

5   respect to my request for reasonable accommodation.

6   Can you help me toward this end?  Do you see that?

7   A        Yes.

8   Q        And she wrote back on the same day about an

9   hour and a half later saying:  Hi, Michael.  Thanks

10  for the update.  I'm working with Samir to identify

11  what supports can be provided and hope to have that

12  information soon.  The ability to offer work from

13  home, even as an accommodation, is still determined by

14  the business needs and ability to support that.

15           And then she proposes another idea.  She

16  writes:  Another option we can consider is simply

17  looking at intermittent leave as an accommodation.  So

18  if you do need that time off, you can take it.  For

19  example, up to one day per week, up to a full day in

20  duration each occurrence.  That would also be a

21  temporary period of 90 days, however, is another

22  option to consider.  Do you see that?

23  A        Yes.

24  Q        So she was -- she was proposing another way

25  around this if Mr. Kopal couldn't agree to two days

DECLARATION OF K. J. HAMILTON – 49

Michael Chavez
August 06, 2021

1   per week, right?

2   A           Well, another way around what?

3   Q           Providing you an accommodation.  She was

4   trying to be creative to solve the problem, right?

5   A           Yeah.  She was certainly trying to provide

6   options.

7   Q           Okay.  And the next page, 213, just to

8   continue with the dialogue, is April 18th, next day in

9   the morning.  You write back:  Hi, Heidi.  Thank you

10  for getting back to me.  I understand that the request

11  for accommodation submitted by my doctor may be denied

12  under the assumption that an approval of this request

13  would cause undue hardship to Amazon's business needs.

14  What I'm asking you for is to help me understand how

15  the final decision to approve or deny the request

16  occurs.  Does it rest solely with my manager's

17  discretion, for example?  Is there an appeals process?

18  Do you see that?

19  A           Yes.

20  Q           And she wrote back -- well, actually before

21  she wrote back, you forwarded that email to your

22  brother, Mr. Chavez, right?

23  A           Yes, it appears so.

24  Q           And you said:  Just forwarding each new

25  communication.  If it gets to be too much, let me

DECLARATION OF K. J. HAMILTON – 50

```
 1    And then other days, you just -- you wish that you
 2    could sort of just go back to your desk and not have
 3    to encounter him throughout the entire day because it
 4    was not -- it was not a good day.
 5    Q        Okay.  You mentioned general workplace
 6    harassment, which is in addition to the things in your
 7    resignation letter.  And in that category, you said he
 8    told you that you were not qualified and that there
 9    was no way for you to improve.  What else did he say
10    that you consider to be -- you also said that he
11    castigated you in front of other team members, and he
12    did that to everybody, not just you?
13    A        Right.  Yes.
14    Q        Do I have that right, so far?
15    A        That is correct.
16    Q        Okay.  What other general workplace
17    harassment did Mr. Kopal or anyone else at Amazon do
18    to you to make you feel compelled to resign?
19    A        He -- he was a micromanager.  So -- and I
20    don't think he was doing this to anybody else, but he
21    watched me like a hawk as far as -- as far as I could
22    tell.  And so that did not -- did not lend itself to
23    feeling good about, you know, working -- working under
24    somebody.
25    Q        Okay.  I've got micromanager and watched you
```

DECLARATION OF K. J. HAMILTON – 51

```
 1   like a hawk.  What else?
 2   A          Can you list off what I've said so far?  I
 3   don't recall.
 4   Q          Sure.  You said he told you that you weren't
 5   qualified for the position, that there was no way for
 6   you to improve.  He castigated you, as well as
 7   everyone else on the team, in public.  You said he was
 8   a micromanager and watched you like a hawk.  Anything
 9   else, general workplace harassment?
10   A          No.  I think that's about it.
11   Q          Okay.
12   A          That's all I can recall at this time.
13   Q          I take it you disagreed with his management
14   style.  You're describing it as micromanaging, and you
15   didn't think that was appropriate.  You would have
16   preferred a more hands-off managerial approach, fair?
17   A          No.  I actually -- I very much appreciate a
18   hands-on manager, somebody who can give me feedback on
19   the things that I'm not doing, can let me know when I
20   am doing things well.  I'm very much the kind of
21   person that wants to grow.  And in order to do that,
22   you need to have somebody who you work closely with
23   that is senior to you and can provide you with
24   meaningful feedback.  That is not what I got from
25   Samir.
```

DECLARATION OF K. J. HAMILTON – 52

```
 1                   C E R T I F I C A T E

 2   State of Washington    )

 3                          )  ss.

 4   County of King         )

 5

 6           I, the undersigned Registered Professional
     Reporter and Washington Certified Court Reporter, hereby
     certify that the foregoing deposition upon Oral examination
 7   of MICHAEL CHAVEZ was taken before me on August 6, 2021 and
     transcribed under my direction;
 8
             That the witness was duly sworn by me pursuant to
 9   RCW 5.28.010 to testify truthfully; that the transcript of
     the deposition is a full, true, and correct transcript to
10   the best of my ability; that I am neither attorney for, nor
     a relative or employee of, any of the parties to the action
11   or any attorney or counsel employed by the parties hereto,
     nor financially interested in its outcome.
12
             I further certify that in accordance with CR
13   30(e), the witness was given the opportunity to examine,
     read, and sign the deposition, within 30 days, upon its
14   completion and submission, unless waiver of signature was
     indicated in the record.
15
             IN WITNESS WHEREOF, I have hereunto set my hand
16   and seal this date, August 10, 2021:

17

18

19
                          _____
20                        Yvonne A. Gillette

21                        Washington Certified Court Reporter

22                        License No. 2129

23

24

25
```

DECLARATION OF K. J. HAMILTON – 53

# EXHIBIT E

6/7/2021                    Gmail - Accommodation Request Michael Chavez, Employee ID # 102525670,

 Gmail

**Mike Chavez <mikechavez3@gmail.com>**

---

## Accommodation Request Michael Chavez, Employee ID # 102525670,
20 messages

---

**Kucera Taylor, Heidi** <heidikt@amazon.com>                    Fri, Mar 29, 2019 at 1:09 PM
To: "Chavez, Michael" <chavmc@amazon.com>, Mike Chavez <mikechavez3@gmail.com>



Hi Michael,

This note is to follow up with you and confirm I was able to connect with your manager Samir and he is in support of the requested accommodation to work from home/flex hours 2 x per month on a temporary basis.

I know we also talked about accessing quiet rooms if needed and how you may want to apprise your manager or a close co-worker should an episode occur (providing emergency contact information if needed, etc.). I believe this was something you were going to talk with your Dr. more about to see if they had any additional perspective or recommendations we could explore together. I did not see any reference to this from your medical provider, however if there is a need you may have related to this or any other medical needs, please let me know so we can be sure to review together as appropriate.

Next steps at this time:

·   I will process a temporary accommodation approval letter for 90 days for the WFH/Flex schedule 2 x per month.

·   We can re-assess your needs at that time and review if further accommodation considerations are needed and what business needs are

·   Your manager will review the work from home telecommuting policy with you and discuss any expectations regarding that and any other expectations regarding work assignments and deliverables, etc.

·   If you have any further needs or requests you would like to review, please let me know.

Please let me know if you have any questions or if there is any additional support I can offer at this time.

Thank you!

Heidi

Heidi Kucera Taylor, CPDM

Regional Accommodations Manager – Corporate/VCS/CS

Email: heidikt@amazon.com

corp-accommodation@amazon.com

---

**Chavez, Michael** <chavmc@amazon.com>                                        Fri, Mar 29, 2019 at 2:18 PM
To: "Kucera Taylor, Heidi" <heidikt@amazon.com>, Mike Chavez <mikechavez3@gmail.com>

Hi Heidi,

Thanks so much for following up with me. I've followed up with my doctor about revising the frequency of work from home / flex hours to 2 times per week. This is what I had discussed with him originally. I will let you know when I get a response from them, but typically they take 2-3 business days to fax paperwork.

Kind regards,


**mikechavez**

Business Analyst, Well-Architected

Seattle, WA

AWS **Well-Architected**

[Quoted text hidden]

---

**Kucera Taylor, Heidi** <heidikt@amazon.com>                                  Fri, Mar 29, 2019 at 3:30 PM
To: "Chavez, Michael" <chavmc@amazon.com>, Mike Chavez <mikechavez3@gmail.com>

DECLARATION OF K. J. HAMILTON – 56

PLTF 000208

Thank you Michael.  I am not sure if 2 x per week can be supported, however once the updated forms are received we can certainly review together.  Thanks!

Heidi Kucera Taylor, CPDM

Regional Accommodations Manager – Corporate/VCS/CS

Email:  heidikt@amazon.com

corp-accommodation@amazon.com



[Quoted text hidden]

---

**Chavez, Michael** <chavmc@amazon.com>                                    Fri, Apr 5, 2019 at 1:03 PM
To: "Kucera Taylor, Heidi" <heidikt@amazon.com>, Mike Chavez <mikechavez3@gmail.com>

Hi Heidi,

I received confirmation from my doctor's office that they sent over a revised accommodations request. I'd be happy to discuss with you at your convenience.

[Quoted text hidden]

---

**Kucera Taylor, Heidi** <heidikt@amazon.com>                              Tue, Apr 9, 2019 at 2:23 PM
To: "Chavez, Michael" <chavmc@amazon.com>, Mike Chavez <mikechavez3@gmail.com>

Hi Michael –

Thank you for the note.  We did receive the updated medical and have added to your file to review.  It appears the Dr. has suggested flex start/end times 1-2 days per month and ability to WFH up to 2 days per week. I will follow back up with your manager and HRBP to confirm this can be supported on a temporary (90 day) basis and will circle back with you.

Thank you!

DECLARATION OF K. J. HAMILTON – 57

PLTF 000209

Heidi Kucera Taylor, CPDM

Sr. Consultant Accommodations: VCS/CS/Corporate

Email:  heidikt@amazon.com | corp-accommodation@amazon.com

**Disability & Leave Services (DLS)**



[Quoted text hidden]

---

**Chavez, Michael** <chavmc@amazon.com>                                          Tue, Apr 9, 2019 at 3:14 PM
To: "Kucera Taylor, Heidi" <heidikt@amazon.com>, Mike Chavez <mikechavez3@gmail.com>

Hi Heidi,

Sounds good. Thanks for letting me know.

Kind regards,

Mike

[Quoted text hidden]

---

**Kucera Taylor, Heidi** <heidikt@amazon.com>                                    Wed, Apr 17, 2019 at 2:28 PM
To: "Chavez, Michael" <chavmc@amazon.com>, Mike Chavez <mikechavez3@gmail.com>

Hi Michael,

I wanted to check back in with you to provide you with a quick update.  I followed up with Samir last week to review the updated temporary accommodation request (specifically around the WFH days) and from what he shared this is not something he can support based on current business needs.  I have sent him a reply to confirm what he feels he can support related to the needs of the business at this time, he had mentioned earlier 2 days per month could be supported for WFH/flex start/end times.  As soon as I hear back from him I will connect back with you.

Thank you,

DECLARATION OF K. J. HAMILTON – 58

PLTF 000210

Heidi

---

**From:** Kucera Taylor, Heidi
**Sent:** Tuesday, April 9, 2019 2:23 PM
**To:** Chavez, Michael <chavmc@amazon.com>; Mike Chavez <mikechavez3@gmail.com>
**Subject:** RE: Accommodation Request Michael Chavez, Employee ID # 102525670,

Hi Michael –

Thank you for the note.  We did receive the updated medical and have added to your file to review.  It appears the Dr. has suggested flex start/end times 1-2 days per month and ability to WFH up to 2 days per week. I will follow back up with your manager and HRBP to confirm this can be supported on a temporary (90 day) basis and will circle back with you.

Thank you!

Heidi Kucera Taylor, CPDM

Sr. Consultant Accommodations: VCS/CS/Corporate

Email:  heidikt@amazon.com | corp-accommodation@amazon.com

**Disability & Leave Services (DLS)**



[Quoted text hidden]

---

**Chavez, Michael** <chavmc@amazon.com>                                                Wed, Apr 17, 2019 at 3:12 PM
To: "Kucera Taylor, Heidi" <heidikt@amazon.com>, Mike Chavez <mikechavez3@gmail.com>

Hi Heidi,

PLTF 000211

Thank you for the update. Samir informed me last week that he would be denying mine and my doctor's request for reasonable accommodations in the form of being allowed to work from home up to 2 days per week. I'd like to learn more about the process of how a final decision will be / has been made with respect to my request for reasonable accommodations. Can you help toward this end?

Kind regards,

Mike

[Quoted text hidden]

---

**Mike Chavez** <mikechavez3@gmail.com>                                          Wed, Apr 17, 2019 at 3:15 PM
To: Eric Chavez <eric@mixsanders.com>

[Quoted text hidden]
--
Kind regards,
Mike
LinkedIn
Github

---

**Kucera Taylor, Heidi** <heidikt@amazon.com>                                    Wed, Apr 17, 2019 at 4:43 PM
To: "Chavez, Michael" <chavmc@amazon.com>, Mike Chavez <mikechavez3@gmail.com>

Hi Michael,

Thanks for the update.  I am working with Simar to identify what supports can be provided and hope to have that information soon.  The ability to offer work from home, even as an accommodation, is still determined by the business needs and ability to support that.

Another option we could consider is simply looking at intermittent leave as an accommodation so if you do need that time off you could take it, for example up to 1 day per week, up to a full day in duration each occurrence. This would also be temporary for a period of 90 days, however is another option to consider.

Thank you

Heidi

[Quoted text hidden]

DECLARATION OF K. J. HAMILTON – 60

PLTF 000212

**Chavez, Michael** <chavmc@amazon.com>                          Thu, Apr 18, 2019 at 10:50 AM
To: "Kucera Taylor, Heidi <heidikt@amazon.com>, Mike Chavez <mikechavez3@gmail.com>

Hi Heidi,

Thank you for getting back to me. I understand that the request for accommodation submitted by my doctor may be denied under the assumption that an approval of this request would cause undue hardship to Amazon's business needs. What I am asking you for is to help me understand how the final decision to approve or deny the request occurs. Does it rest solely on my manager's discretion, for example? Is there an appeals process?

[Quoted text hidden]

**Mike Chavez** <mikechavez3@gmail.com>                          Thu, Apr 18, 2019 at 11:17 AM
To: Eric Chavez <eric@mixsanders.com>

Just forwarding each new communication. If it gets to be too much, let me know. Ridiculous that somehow letting me work from home will be adverse to the business but allowing intermittent leave (basically the day off w/o pay) is not.

---------- Forwarded message ---------
From: **Chavez, Michael** <chavmc@amazon.com>
[Quoted text hidden]
[Quoted text hidden]

[Quoted text hidden]

**Kucera Taylor, Heidi** <heidikt@amazon.com>                          Thu, Apr 18, 2019 at 4:48 PM
To: "Chavez, Michael" <chavmc@amazon.com>, Mike Chavez <mikechavez3@gmail.com>

Hi Michael,

Thanks for the additional clarification on your question. There is not an appeal process and yes, while the decision is a partnership, the discretion more directly sits with the business as determined by your leadership/HR. I have not heard back from your manager yet as to what amount of flexibility there may be with the WFH/flex scheduling and plan to reach out to your HRBP to see if we can identify an option that will work for both you and your department.

My thought was to consider the following:

·   Work From Home and flex start/end times up to 2 days per month

·   Intermittent leave up to 2 days per month, up to a full day in duration each occurrence

DECLARATION OF K. J. HAMILTON – 61

PLTF 000213

Case 2:21-cv-00007-BJR    Document 28    Filed 01/20/22    Page 62 of 95

·    Temporary for 90 days then re-assess

Do you believe this may be helpful?

Thank you for your continued patience and willingness to work through this iterative process together. I am hopeful we are close to a workable solution to provide the level of support you are needing and that fits current operational needs.

In the interim, please do not hesitate to reach out to me if there is anything I additional I can help answer or assist you with.

Thank you!

[Quoted text hidden]

---

**Chavez, Michael** <chavmc@amazon.com>      Mon, Apr 22, 2019 at 2:10 PM
To: "Kucera Taylor, Heidi" <heidikt@amazon.com>, Mike Chavez <mikechavez3@gmail.com>

Hi Heidi,

Thank you for shedding some more light on the process. With respect to your proposal of intermittent leave, I do not believe this would accommodate my needs. My assumption is that intermittent leave is unpaid. If this is the case, then effectively I am being dis-incentivized to tend to my health by being asked to take on financial hardship in the event that I need more than 2 days of working from home due to my disability.

[Quoted text hidden]
[Quoted text hidden]



[Quoted text hidden]

---

**Kucera Taylor, Heidi** <heidikt@amazon.com>      Mon, Apr 22, 2019 at 4:21 PM
To: "Chavez, Michael" <chavmc@amazon.com>, Mike Chavez <mikechavez3@gmail.com>

Hi Michael,

DECLARATION OF K. J. HAMILTON – 62

PLTF 000214

Case 2:21-cv-00007-BJR     Document 28     Filed 01/20/22     Page 63 of 95

I was able to connect with your HRBP and the supports noted below are something she is aligned with. She is connecting with Samir to ensure there are no issues, however we anticipate being able to move forward and get the approval in place for your. As soon as I hear from her I will let you know and we can get a formal approval issued.

The ability to provide a 2 day per month WFH/flex start-end times and another 2 days per month of intermittent leave (up to a full day each absence if needed) will hopefully offer you some additional supports and is something we can certainly re-assess as we go. As a salaried employee the intermittent leave accommodation days are paid regular salary.

[Quoted text hidden]

---

**Chavez, Michael** <chavmc@amazon.com>            Tue, Apr 23, 2019 at 10:45 AM
To: "Kucera Taylor, Heidi" <heidikt@amazon.com>, Mike Chavez <mikechavez3@gmail.com>

Hi Heidi,

I apologize for assuming incorrectly that the intermittent leave would be unpaid. As I would not incur any financial hardship in accordance with it, I can agree to try the modified accommodations you've suggested.

[Quoted text hidden]

---

**Chavez, Michael** <chavmc@amazon.com>            Tue, Apr 30, 2019 at 10:38 AM
To: "Kucera Taylor, Heidi" <heidikt@amazon.com>, Mike Chavez <mikechavez3@gmail.com>

Hi Heidi,

Has there been any update to this accommodation request? I ask because I have had several seizures in the past month. Without accommodations, it is very difficult for me to tend to my health and deliver in my work responsibilities.

Kind regards,

Mike

---

**From:** Chavez, Michael
**Sent:** Tuesday, April 23, 2019 10:46 AM

DECLARATION OF K. J. HAMILTON – 63

PLTF 000215

**To:** Kucera Taylor, Heidi <heidikt@amazon.com>; Mike Chavez <mikechavez3@gmail.com>
**Subject:** RE: Accommodation Request Michael Chavez, Employee ID # 102525670,

Hi Heidi,

I apologize for assuming incorrectly that the intermittent leave would be unpaid. As I would not incur any financial hardship in accordance with it, I can agree to try the modified accommodations you've suggested.

Kind regards,

[Quoted text hidden]

---

**Kucera Taylor, Heidi** <heidikt@amazon.com>                                                    Tue, Apr 30, 2019 at 10:48 AM
To: "Chavez, Michael" <chavmc@amazon.com>, Mike Chavez <mikechavez3@gmail.com>

Hi Michael,

My apologies for the delay as I have been working with your HR and Manager to move this forward and process the approval. I have sent another inquiry and hope to have a final reply this week.  In the meantime, please send me the days you have missed related to your medical matter so I can include those as excused time.

Thank you,

Heidi Kucera Taylor, CPDM

Sr. Consultant Accommodations: VCS/CS/Corporate

Email:  heidikt@amazon.com | corp-accommodation@amazon.com

**Disability & Leave Services (DLS)**



[Quoted text hidden]

DECLARATION OF K. J. HAMILTON – 64

PLTF 000216

Case 2:21-cv-00007-BJR    Document 28    Filed 01/20/22    Page 65 of 95

**Chavez, Michael** <chavmc@amazon.com>                                          Tue, Apr 30, 2019 at 1:35 PM
To: "Kucera Taylor, Heidi" <heidikt@amazon.com>, Mike Chavez <mikechavez3@gmail.com>

Hi Heidi,

Thank you. I appreciate your work toward getting the accommodations approved.

Here are the dates that I have missed due to seizures this month:

· 4/4/19

· 4/12/19

· 4/29/19

I have submitted each of these via timeoff.amazon.com. Should I keep them as-is, or should I delete them?

[Quoted text hidden]

---

**Kucera Taylor, Heidi** <heidikt@amazon.com>                                    Tue, Apr 30, 2019 at 2:05 PM
To: "Chavez, Michael" <chavmc@amazon.com>, Mike Chavez <mikechavez3@gmail.com>

Hi Michael,

Please go ahead and delete them. I will be sending over your approval here shortly and will include some information regarding excusing the dates noted (as part of the pending accommodation review) and how to report the intermittent time missed as part of the accommodation moving forward.

Thanks!

[Quoted text hidden]

DECLARATION OF K. J. HAMILTON – 65

PLTF 000217

# EXHIBIT F

 Gmail

**Mike Chavez <mikechavez3@gmail.com>**

---

## FW: Intent to resign

---

**Manegold, Christina** <manegol@amazon.com>                                   Tue, May 14, 2019 at 7:06 PM
To: Mike Chavez <mikechavez3@gmail.com>
Cc: "Chavez, Michael" <chavmc@amazon.com>, "Manegold, Christina" <manegol@amazon.com>

Hi Mike,

I'm writing to follow-up on my email from May 9 (below), as I have not heard back from you.  We want to be sure we have the opportunity to review fully the concerns you raised.  As of right now, we have your submitted resignation for May 17, but we are unsure if you still intend to proceed with that.  We would like the chance to talk with you about that, and your noted concerns.  As to your note in your May 6 email about your lawyer being present, we do not allow external counsel in our internal meetings over HR/ER matters.  Finally, as to your request for severance pay in your May 2 email, we would need to talk with you first about that as well.  I hope to hear from you soon, and before your noted upcoming resignation date.

Thanks.

Christina

EXHIBIT
**16**
Michael Chavez

On May 9, 2019, at 1:35 PM, Manegold, Christina <manegol@amazon.com> wrote:

Hi Michael,

Thank you so much for bringing your concerns forward regarding the experience you have had since returning from your leave.  I am so sorry to hear of the difficulties you are facing.  We take concerns of this nature very seriously and will conduct the most thorough investigation possible based on the information you have provided.  My hope is you will pause on your resignation and allow us to look into your concerns prior to your exit.

Given what you shared regarding your declining health, I would like to make sure you have all the information you may need.  Would you be amiable to me having a representative from our Leave of Absence and Accommodation team reach out to you?

I also recognize and understand this can be a difficult time and I want to make sure you have information about our Employee Assistance Program.  It is an excellent resource for support should you wish to use it.   https://inside.amazon.com/en/employment/usbenefits/eap/pages/default.aspx 1-855-435-4333.

DECLARATION OF K. J. HAMILTON – 67                                                    **PLTF 000232**

Please do not hesitate to let me know if there is anything additional I can do to support you, if you have questions or additional concerns.

Kind regards,

Christina

**From:** Mike Chavez <mikechavez3@gmail.com>
**Sent:** Monday, May 6, 2019 12:34 PM
**To:** Manegold, Christina <manegol@amazon.com>
**Cc:** Chavez, Michael <chavmc@amazon.com>
**Subject:** Re: FW: Intent to resign

Hi Christina,

I believe I have presented the facts in a fair and accurate manner. As I noted in my initial email to Jennifer, I have experienced an increase in seizures since I have returned to work. This has caused much anxiety and stress which further the likelihood of additional seizures. With this in mind, I do not wish to subject myself to more questioning without the representation of an attorney. If you would like to discuss in greater detail, please let me know how best we can do so such that I can have legal counsel present.

Kind regards,

Mike

On Mon, May 6, 2019 at 11:27 AM Manegold, Christina <manegol@amazon.com> wrote:

Hi Mike,

Moving Jen to BCC.   I'd like to schedule a call for the two of us to speak and to dive deeper into the concerns you've outlined in your email.  I'm unfortunately not in Seattle this week and so it will need to occur via Chime.  Can you tell me which day this week would be best?

Thank you.

DECLARATION OF K. J. HAMILTON – 68

PLTF 000233

Christina

---

**From:** Zumek, Jennifer <jzzumek@amazon.com>
**Sent:** Monday, May 6, 2019 11:22 AM
**To:** Mike Chavez <mikechavez3@gmail.com>
**Cc:** Chavez, Michael <chavmc@amazon.com>; Manegold, Christina <manegol@amazon.com>
**Subject:** RE: FW: Intent to resign


Please try this number 1-206-266-4357 which I found on the Global IT Support page https://it.amazon.com/en/it-contacts/it-support-locations


Thanks,


Jen


**From:** Mike Chavez <mikechavez3@gmail.com>
**Sent:** Monday, May 6, 2019 10:51 AM
**To:** Zumek, Jennifer <jzzumek@amazon.com>
**Cc:** Chavez, Michael <chavmc@amazon.com>; Manegold, Christina <manegol@amazon.com>
**Subject:** Re: FW: Intent to resign


Do you have the contact info for IT?

Kind regards,

Mike


On Mon, May 6, 2019 at 10:38 AM Zumek, Jennifer <jzzumek@amazon.com> wrote:

> Sounds good. Please keep me posted on what you find out.

DECLARATION OF K. J. HAMILTON – 69

PLTF 000234

Jen

**From:** Mike Chavez <mikechavez3@gmail.com>
**Sent:** Monday, May 6, 2019 10:37 AM
**To:** Zumek, Jennifer <jzzumek@amazon.com>
**Cc:** Chavez, Michael <chavmc@amazon.com>; Manegold, Christina <manegol@amazon.com>
**Subject:** Re: FW: Intent to resign

Hi Jennifer,

Thank you for getting back to me. I'll contact IT. I appreciate your help.

Kind regards,

Mike

On Mon, May 6, 2019 at 10:31 AM Zumek, Jennifer <jzzumek@amazon.com> wrote:

> Hi Mike,
>
> Thanks for reaching out.  HR has not taken any action to terminate or suspend you in the systems.  Please be sure to contact IT for assistance.
>
> Further to my note on Friday, we hope to have confirmation back today as to our follow up with you per the concerns outlined in your note last week.  I appreciate your patience.
>
> Thank you,
>
> Jennifer

DECLARATION OF K. J. HAMILTON – 70

PLTF 000235

**Jennifer Zumek**

Sr. HR Business Partner

**E:** jzzumek@amazon.com | **P:** (206) 660-6958 | **O:** (206) 765-2508

Questions on training & development? Visit the AWS LDTM Learning Portal!

<image001.png>

**From:** Mike Chavez <mikechavez3@gmail.com>
**Sent:** Monday, May 6, 2019 10:25 AM
**To:** Chavez, Michael <chavmc@amazon.com>; Zumek, Jennifer <jzzumek@amazon.com>; Manegold, Christina <manegol@amazon.com>
**Subject:** Re: FW: Intent to resign

Hi Jennifer / Christina,

I just tried to check my work email using my work laptop and my entire profile has been removed rendering me unable to access the Amazon intranet and my email. Is this revocation of access part of your investigation? Has my employment with Amazon been terminated?

Kind regards,
Mike

On Fri, May 3, 2019 at 4:20 PM Mike Chavez <mikechavez3@gmail.com> wrote:

Hi Jennifer / Christina,

I appreciate you looking into this matter and I look forward to hearing from you.

DECLARATION OF K. J. HAMILTON – 71

PLTF 000236

Kind regards,

Mike

---

**From:** Zumek, Jennifer <jzzumek@amazon.com>
**Sent:** Friday, May 3, 2019 1:14 PM
**To:** Chavez, Michael <chavmc@amazon.com>
**Cc:** Manegold, Christina <manegol@amazon.com>; Zumek, Jennifer <jzzumek@amazon.com>
**Subject:** RE: Intent to resign

Hi Michael,

Thank you for your note.  You raise a number of concerns in your note which I'd like to be sure that HR has an opportunity to investigate.

While I've been the HR contact for WW Solutions Architecture, we have a new HR leader, Christina Manegold, who just started in her role this week.  I'll be partnering with her to ensure that we follow up with you on these concerns.  One of us will be back in contact with you as soon as possible to discuss next steps.

Jennifer

**Jennifer Zumek**

Sr. HR Business Partner

**E:** jzzumek@amazon.com | **P:** (206) 660-6958 | **O:** (206) 765-2508

Questions on training & development? Visit the AWS LDTM Learning Portal!

<image001.png>

---

DECLARATION OF K. J. HAMILTON – 72

PLTF 000237

6/25/2021                                          Gmail - FW: Intent to resign

**From:** Chavez, Michael <chavmc@amazon.com>
**Sent:** Thursday, May 2, 2019 1:25 PM
**To:** Zumek, Jennifer <jzzumek@amazon.com>
**Subject:** Intent to resign

Hi,

I'm writing to you to inform you of my intent to resign my position as business analyst here at AWS. The reason I am doing so is primarily out of concern for my health and general well-being. As I'm sure you are aware, I suffer from epilepsy, an incredibly debilitating disability when the seizures occur. I also believe you are aware that I returned from a medical leave of absence due to epilepsy on 2/19/19 and that upon my return I submitted a request for reasonable accommodations in accordance with the Americans with Disabilities Act. I was informed on 4/30/2019 that my request for accommodations was approved, more than 2 months after my initial inquiry.

Since I have returned to work my health has declined. I've informed my manager, Samir Kopal, each time that I have had an absence, have needed schedule flexibility, or have worked from home due to seizures.  He has not been supportive in any reasonable fashion. For context I will summarize some of the conversations I have had with Samir.

· 4/2/19

   o  Samir scheduled a 1:1 and starts the conversation by asking me what my long-term goal is and I tell him that I'd like to transition to an SDE role.

   o  His response is that I am not going to be able to accomplish this, because I don't have the skillset and would not be able to develop the necessary skillset and that I should "take my Amazon badge and go join a startup"

   o  The rest of the conversation centered on how I am too slow in completing tasks and that I am not performing as is expected for a Level 5 Business Analyst.

· 4/10/19

   o  Samir does not schedule a 1:1, but comes to my desk and asks me to follow him to a conference room.

   o  He informs me that he will not be approving my original accommodation request of working from home up to 2 days per week, but would support 2 days per month.

   o  He then asks me if I plan to quit in the next three weeks, because he would like to be able to ask for headcount for a replacement for me

· 4/28/19

   o  I sent Samir a chime message at night informing him I had a seizure earlier in the day and would need to stay home the following day (4/29/19).

   o  I received no response from Samir

DECLARATION OF K. J. HAMILTON – 73

PLTF 000238

- 4/30/19
  - o I return to work and submit my absence to timeoff.amazon.com, accounting for 4 hours of work I did at night
  - o Samir asks me to put in 8 hours of sick time, even after explaining to him that I had only used 4 hours of sick time.

It is unfortunate that I have no choice, but to leave Amazon. I came to this company to build a career. But my health and well-being have to come first. In light of this, I am asking for 3 months of severance pay following my last day of work, which will be 5/17/2019. This will allow me to tend to my health and look a for a new position. I believe this is only fair given all that I have had to endure.

Kind regards,

**mike**chavez

Business Analyst, Well-Architected

Seattle, WA

 AWS **Well-Architected**

--

Kind regards,
Mike
LinkedIn
Github

DECLARATION OF K. J. HAMILTON – 74

PLTF 000239

Case 2:21-cv-00007-BJR    Document 28    Filed 01/20/22    Page 75 of 95

--

Kind regards,
Mike
LinkedIn
Github


--

Kind regards,
Mike
LinkedIn
Github


--

Kind regards,
Mike
LinkedIn
Github


--

Kind regards,
Mike
LinkedIn
Github

---

**2 attachments**

 **image001.png**
4K

 **image002.png**
7K

DECLARATION OF K. J. HAMILTON – 75

PLTF 000240

Case 2:21-cv-00007-BJR     Document 28     Filed 01/20/22     Page 76 of 95

DECLARATION OF K. J. HAMILTON – 76

PLTF 000241

# EXHIBIT G



CHAVEZ 0662



CHAVEZ 0667



CHAVEZ 0669

DECLARATION OF K. J. HAMILTON – 80



CHAVEZ 0670



CHAVEZ 0674

if they do, he will be screwed

What has he said or done

cuz it was pretty much he and he alone

so he hates me for sure

i got his friend in trouble

the chick that got me hird

she got into with another mgr in month 2 of me being there. they had an argument at our desks and i tried to calm things down and she called me a liar in front of the whole team

i wrote to my sr mgr wtf, i thought you told me this shit doesn't happen here. he was cool and said he would take care of it. she quits 1 month later

now i work for her buddy (this is jan 2018)

CHAVEZ 0675

DECLARATION OF K. J. HAMILTON – 83



CHAVEZ 0676



CHAVEZ 0679



CHAVEZ 0682

# EXHIBIT H

 **Gmail**

**Mike Chavez <mikechavez3@gmail.com>**

## FW: Accommodation Request Letter for Michael Chavez, Employee ID # 102525670, Case # 1915537747

7 messages

**Chavez, Michael** <chavmc@amazon.com>                                           Fri, Feb 22, 2019 at 5:17 PM
To: "mikechavez3@gmail.com" <mikechavez3@gmail.com>

**From:** accommodations@amazon.com <accommodations@amazon.com>
**Sent:** Thursday, February 21, 2019 9:41 AM
**To:** mikechavez3@yahoo.com
**Cc:** Chavez, Michael <chavmc@amazon.com>
**Subject:** Accommodation Request Letter for Michael Chavez, Employee ID # 102525670, Case # 1915537747

**Fax:** 1-206-646-3213
**Email:** corp-accommodation@amazon.com

February 21, 2019

Michael Chavez
501 Roy St Unit F231
Seattle, WA  98109

Accommodation Request Letter, Case Number:   1915537747

Dear  Michael Chavez:

We were notified of your request for accommodation on 2/20/2019. This follow-up letter contains information about the process and the forms you need to complete so that we can explore effective work accommodation solutions. Please note, your co mpleted forms (outlined below) are to be returned no later than your paperwork **DUE DATE**: [**2/28/19**] (see the *Form Submission Guidelines* below).

**Forms for Completion and Submission**

PLTF 000218

6/7/2021                    Gmail - FW: Accommodation Request Letter for Michael Chavez, Employee ID # 102529670, Case # 1915537747

q  **Voluntary Authorization to Contact the Healthcare Provider**  (for you to complete)

This form allows Amazon (MyAccommodation) to contact your healthcare provider directly if your medical documentation is insufficient and clarification or additional information is needed to evaluate your request for accommodation. This form does not provide Amazon with access to your complete medical records or to any other private health information, which remains confidential to you and your healthcare provider.

q  **Employee Accommodation Request form**  (for you to complete)

This form allows you to identify your current difficulties or limitations that are impacting your ability to do your job. It is also an opportunity for you to identify any potential accommodation options that you want us to consider. You are not required to disclose your underlying health condition, but you may disclose this information (confidentially),if you think it will assist us  identifying an appropriate accommodation.

q  **Healthcare Provider Certification Form**(for your healthcare provider to complete)

This form gives your healthcare provider an opportunity to provide information about any limitations or restrictions that we need to consider when exploring potential accommodation solutions for you. This form is to be c ompleted only by your healthcare provider.

**Form Submission Guidelines**

·  Ensure you obtain and review a copy of the Healthcare Provider Certification Form (or any other forms) completed by your healthcare provider. This is especially important if your healthcare provider is submitting the forms directly to Amazon on your behalf. The receptionist or office assistant should be able to provide you with a copy before you leave your appointment.

·  Make sure all forms are fully completed before you submit them to Amazon. Missing information can sometimes cause delays in the accommodation review process.

·  There are three options for you to submit your forms to MyAccomodation:

1.  Smart Phone/Device: Take a photo of your forms and email them to corp-accommodation@amazon.com. This is the preferred and fastest way to submit your forms.

2.  Printer/Scanner: You may scan and email your forms to corp-accommodation@amazon.com.

3.  Fax: You and/or your healthcare provider can fax documents to MyAccommodation at

1-206-646-3213. Allow up to 24 hours for your faxed forms to be reviewed.

·  You must submit your forms by the due date listed above. Please contact MyAccommodation if you are unable to submit your paperwork by the due date so that we can assist or make alternative arrangements. If you do not submit the forms by the due date (without making prior

DECLARATION OF K. J. HAMILTON – 89

PLTF 000219

arrangements), we will assume that you do not have a qualifying disability and that you are able to perform all of your essential job duties without an accommodation. We will close your accommodation request case at that time.

· If your accommodation request and/or work location allow for an accommodation without providing medical certification, you are not required to submit that portion of this packet. For example, if you work in WA or MA and your accommodation request is for a condition related to pregnancy, you are not required to submit medical certification in some circumstances. Please contact your RAM or RAS if you need additional information on the requirements related to your request.

**Important Information for You to Know**

· Your active participation in the interactive accommodation process is required so that we can explore all potential accommodation solutions. This includes you participating in meetings or calls, submitting the necessary forms, and actively engaging with us throughout the accommodation process.

· After we receive your forms, your case will be assigned to a Regional Accommodation Manager (RAM)or Regional Accommodation Specialist (RAS), who will contact you within 24 business hours (after receipt of your forms). Your RAM or RAS will confirm the information contained in the forms and notify you if any additional information is needed, or otherwise explain next steps. Your RAM or RAS will continue to work with you to facilitate the accommodation review and serve as your point of contact throughout the process. Please note that while some accommodation requests can be evaluated within a few days, sometimes it can take more time to complete the interactive accommodation process.

· Your RAM or RAS will communicate with your work location to determine whether an accommodation can be provided. After a determination is made on your accommodation request, your RAM or RAS will communicate next steps with you. In the event we are unable to provide a workplace accommodation, your RAM or RAS will initiate a leave of absence on your behalf.  If we are able to provide a workplace accommodation, your RAM or RAS will confirm the accommodation is in place and notify you of next steps. Generally speaking, your request for accommodation should take approximately one week to finalize and implement.

· You indicated that you are still able to perform your job duties during the accommodation process. You will be responsible for meeting any rate or performance standards. If your situation changes and you are unable to continue working until an accommodation can be provided, please contact HR or MyAccommodation.

· If you are unable to perform the essential duties of your position with or without an accommodation while we engage in the interactive accommodation process, your RAM or RAS may place you off work during the accommodation review process. These absences may be provisionally excused. For any additional absences beyond that period, we will initia te a leave with MyLeave on your behalf. Your eligibility for leave of absence is determined by MyLeave, based on the terms and conditions of the applicable policies. You will need to complete the leave process through MyLeave in order for your leave to be approved. Absences that are not covered under the accommodation process or an approved leave of absence may be subject to the attendance policy. Failure to submit sufficient documentation or participate in the accommodation process may remove any provisional approvals and result in unexcused absences.

· If you are experiencing any difficulty throughout the accommodation process, you may contact your RAM or RAS, or any member of MyAccommodation for guidance and assistance.

If you have any additional questions, please contact local HR, MyAccommodation via email at corp-accommodation@amazon.com, or the RAM or RAS assigned to your case. Thank you.

DECLARATION OF K. J. HAMILTON – 90

PLTF 000220

Heidi Kucera Taylor  |  Amazon

Page 1 of 3

---

**4 attachments**

 **logo1**
44K

**17 Employee Questionaire.pdf**
106K

**909 - VOLUNTARY RELEASE AND DISCLOSURE.pdf**
469K

**905a - HCP Certification Form - Physical.pdf**
126K

---

**Chavez, Michael** <chavmc@amazon.com>                                    Tue, Mar 5, 2019 at 1:32 PM
To: accommodations <accommodations@amazon.com>
Cc: "Kucera Taylor, Heidi" <heidikt@amazon.com>, "mikechavez3@gmail.com" <mikechavez3@gmail.com>

Hi,

Please see attached for forms related to my accommodations request initiated on 2/20/2019. Let me know if you need anything else.

Kind regards,

**mikechavez**

Business Analyst, Well-Architected

Seattle, WA

 AWS **Well-Architected**

DECLARATION OF K. J. HAMILTON – 91

PLTF 000221

**From:** accommodations@amazon.com <accommodations@amazon.com>
**Sent:** Thursday, February 21, 2019 9:41 AM
**To:** mikechavez3@yahoo.com
**Cc:** Chavez, Michael <chavmc@amazon.com>
**Subject:** Accommodation Request Letter for Michael Chavez, Employee ID # 102525670, Case # 1915537747



**Fax:** 1-206-646-3213
**Email:** corp-accommodation@amazon.com

[Quoted text hidden]

---

**2 attachments**

📄 **17_Employee_Questionaire_mc.pdf**
108K

📄 **909_-_VOLUNTARY_RELEASE_AND_DISCLOSURE_mc.pdf**
473K

---

**Kucera Taylor, Heidi** <heidikt@amazon.com>                              Wed, Mar 6, 2019 at 4:15 PM
To: "Chavez, Michael" <chavmc@amazon.com>, accommodations <accommodations@amazon.com>
Cc: "mikechavez3@gmail.com" <mikechavez3@gmail.com>

Thank you Michael.  I have added to your file.  We are still awaiting your health care provider portion.  Once that is received we can move forward with our review.

Heidi Kucera Taylor, CPDM

Regional Accommodations Manager – Corporate/VCS/CS

Email:  heidikt@amazon.com

corp-accommodation@amazon.com



[Quoted text hidden]

---

**Kucera Taylor, Heidi** <heidikt@amazon.com>                              Tue, Mar 12, 2019 at 1:25 PM
To: "Chavez, Michael" <chavmc@amazon.com>

DECLARATION OF K. J. HAMILTON – 92

PLTF 000222

Cc: "mikechavez3@gmail.com" <mikechavez3@gmail.com>

Hi Michael,

This note is to confirm we received both your portion and the Dr. portion of your accommodation forms and have added to your file to review. In looking at the information from your physician they suggested flexible start/end times 1-2 days per month related to when you experience an episode. We can certainly look to provide some intermittent leave as an accommodation to support this time from work.

I know you and I discussed accommodations you were inquiring about, which included flex scheduling (such as what your Dr. noted) as well as work from home options and a safe place to recuperate at work should you experience an episode. Please let me know if you still wish to explore the other items noted or if you are currently looking at just the flex start/end as referenced by your physician.

Thank you!

[Quoted text hidden]

---

**Mike Chavez** <mikechavez3@gmail.com>                                      Tue, Mar 12, 2019 at 1:37 PM
To: "Kucera Taylor, Heidi" <heidikt@amazon.com>
Cc: "Chavez, Michael" <chavmc@amazon.com>

Hi Heidi,

I think there may have been some miscommunication between my doctor's staff and he. I discussed with him each of the options that I discussed with you and he said he would support them. I would like to pursue the items we discussed: flex scheduling, work from home options, and safe place to recuperate. Let me know if you'd like me to speak with my doctor's office to see if there was a misunderstanding or anything else you may need from me.

Kind regards,
Mike

[Quoted text hidden]
--
Kind regards,
Mike
LinkedIn
Github

---

**Kucera Taylor, Heidi** <heidikt@amazon.com>                                Wed, Mar 13, 2019 at 2:30 PM
To: Mike Chavez <mikechavez3@gmail.com>
Cc: "Chavez, Michael" <chavmc@amazon.com>

DECLARATION OF K. J. HAMILTON – 93

PLTF 000223

Thank you for confirming.  If you can follow up with the Dr. and ask they send those additional items and any additional recommendations they may have on addressing those items so we can add to your file.  In the meantime we can certainly continue moving forward with the review of your requests.

I will follow up with your manager and HR to determine what may be possible in terms of the flex schedule and WFH.  I know we discussed the option of a Quiet Room for you to use as needed and that there are several in your building.  We also discussed having a plan in place should you not feel while at work and what that may look like in terms of having a co-worker or your manager available to assist you and/or contact an emergency contact to help get you home.  If you can please let me know where you are with that and any additional ideas or suggestions you may have to help manage that so we can be sure to include in our review of the accommodation.

Thank you!

Heidi

**From:** Mike Chavez <mikechavez3@gmail.com>
**Sent:** Tuesday, March 12, 2019 1:37 PM
**To:** Kucera Taylor, Heidi <heidikt@amazon.com>
**Cc:** Chavez, Michael <chavmc@amazon.com>

[Quoted text hidden]

[Quoted text hidden]

---

**Kucera Taylor, Heidi** <heidikt@amazon.com>                                    Fri, Mar 15, 2019 at 10:26 AM
To: Mike Chavez <mikechavez3@gmail.com>
Cc: "Chavez, Michael" <chavmc@amazon.com>

Hi Michael!

This note is to check in with you and confirm that I have reached out to your manager Samir and your HR contact to confirm what options are available to support flex scheduling and/or Work from home up to 2 days per month.  As soon as I hear back I will let you know.  In addition I wanted to share with you I will be OOTO from 3/19 to 3/27.  If you have any urgent needs that arise in my absence please contact our corp-accommodation corp-accommodation@amazon.com to re-direct you to another accommodation manager in my absence.

Thank you!

Heidi

PLTF 000224

**From:** Kucera Taylor, Heidi
**Sent:** Wednesday, March 13, 2019 2:30 PM
**To:** 'Mike Chavez' <mikechavez3@gmail.com>
**Cc:** Chavez, Michael <chavmc@amazon.com>
**Subject:** RE: Accommodation Request Letter for Michael Chavez, Employee ID # 102525670, Case # 1915537747

Thank you for confirming.  If you can follow up with the Dr. and ask they send those additional items and any additional recommendations they may have on addressing those items so we can add to your file.  In the meantime we can certainly continue moving forward with the review of your requests.

I will follow up with your manager and HR to determine what may be possible in terms of the flex schedule and WFH.  I know we discussed the option of a Quiet Room for you to use as needed and that there are several in your building.  We also discussed having a plan in place should you not feel while at work and what that may look like in terms of having a co-worker or your manager available to assist you and/or contact an emergency contact to help get you home.  If you can please let me know where you are with that and any additional ideas or suggestions you may have to help manage that so we can be sure to include in our review of the accommodation.

Thank you!

Heidi

**From:** Mike Chavez <mikechavez3@gmail.com>
**Sent:** Tuesday, March 12, 2019 1:37 PM
**To:** Kucera Taylor, Heidi <heidikt@amazon.com>

[Quoted text hidden]

[Quoted text hidden]

DECLARATION OF K. J. HAMILTON – 95

PLTF 000225